Nancy R. CAPASSO, Plaintiff,

v.

CIGNA INSURANCE COMPANY (f/k/a Aetna Insurance Company), Cigna Fire Underwriters Insurance Company (f/k/a Aetna Fire Underwriters Insurance Company, European American Bank, Carl A. Capasso, Nanco Contracting Corp., Nanco Equipment Corp. n/k/a Underground Equipment, Ltd., Nanco Concrete Corp. n/k/a Review Supplies, Inc., Capasso Contracting Corp., Big City Contracting Corp., HHM Associates, Inc., Corroon & Black/Contractors Planning Group, Inc., (f/k/a Contractors Planning Group, Inc.), Richard Ferrucci, Frank McCranie, Thomas Bean, Neil Donovan, John K. Levenson, Philip Limanni, "John and Jane Does 1–10" and "XYZ Corporations", Defendants.

No. 90 Civ. 0263(MEL).

United States District Court,
S.D. New York.

June 10, 1991.

Leavy Rosensweig & Hyman, New York City (Steven J. Hyman, Paul H. Levinson, of counsel), for plaintiff.

Calinoff & Katz, New York City (Thomas A. Martin, of counsel), Winston & Strawn, New York City (Anthony J. D'Auria, Joseph DiBenedetto, Thomas J. Quigley, Deborah Winograd, of counsel), for defendants CIGNA [Property & Cas.] Ins. Co. (f/k/a Aetna Ins. Co.), CIGNA Fire Underwriters Ins. Co. (f/k/a Aetna Fire Underwriters Ins. Co.), Frank McCranie, Thomas Bean, Neil Donovan and John Levenson.

Albanese, Albanese & Fiore, Garden City, N.Y. (Amy Sekuler, Richard Metli, of counsel), for defendants European American Bank and Philip Limanni.

Goldman & Hafetz, New York City (Frederick P. Hafetz, Jeremy Gutman, Adam Thurschwell, of counsel), Jay Goldberg, New York City, for defendants Carl A. Capasso, Nanco Contracting Corp., Nanco Equipment Corp., Nanco Concrete Corp., n/k/a Review Supplies, Inc., Capasso Concrete Corp., Big City Contracting Corp.

Wilson Elser Moskowitz, Edelman & Dicker, New York City (Wayne E. Borgeest, Phyllis A. Ingram, Timothy J. Sheehan, of counsel), for defendants Corroon & Black/Contractors Planning Group, Inc. and Richard Ferrucci.

LASKER, District Judge.

Carl and Nancy Capasso were married in 1971 and divorced in 1985. During the time of their marriage, the couple accumulated substantial wealth through the operation of Nanco Construction Corp. ("NCC"), a contracting company owned by Carl Capasso which was the primary sewer contractor for the City of New York.

Nancy Capasso alleges that Carl Capasso formed new corporations for the purpose of diverting assets away from NCC and thereby placing them outside the reach of Nancy Capasso in the divorce action. She claims that CIGNA, EAB and the other defendants conspired with Carl Capasso to conceal vital information from her with regard to the financial condition of NCC and, when NCC became insolvent, to saddle her with its enormous debts while allowing Carl Capasso to retain his share of the marital assets. She asserts that as a result of the actions of the defendants, her award in the divorce case was less than it should have been and the defendants prevented her from collecting even that by encumbering Carl Capasso's assets with judgments and liens in favor of CIGNA and EAB. She alleges that the actions taken by the defendants constitute a violation of RICO, as well as common law fraud and prima facie tort. The defendants move to dismiss for failure to state a claim on which relief can be granted and failure to plead fraud with particularity. For the reasons explained below, the motions are granted.

As predicate acts for her RICO claim, Nancy Capasso alleges that each of the defendants committed at least two offenses of mail or wire fraud. The defendants challenge her fraud claims on two grounds: 1) the claims are based almost entirely on nondisclosures of information which the defendants had no duty to disclose; and 2) the actions alleged did not damage her property.

### A. No Duty to Disclose

 With the exception of certain allegations of perjury,[1] all of Mrs. Capasso's fraud claims concern failures to disclose, rather than affirmative misrepresentations. A nondisclosure is fraudulent only if there was a duty to disclose the information withheld. *United States v. Chestman*, 903 F.2d 75, 79 (2d Cir.1990); *Morin v. Trupin*, 711 F.Supp. 97, 103 (S.D.N.Y.1989). More particularly, a duty to disclose arises only

---

1. Perjury is not a predicate act of racketeering designated in § 1961(1) and thus cannot by itself support a RICO action. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).

where the parties have a fiduciary relationship and one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge. *Chestman*, 903 F.2d at 79; *Morin*, 711 F.Supp. at 103.

■ The defendants argue that in view of the adversarial posture of Carl and Nancy Capasso toward one another during the period in question, there could not have been a fiduciary obligation between them and none has been alleged. Indeed, Nancy Capasso concedes that Carl did not have a fiduciary duty toward her. She claims, however, that he had a legal obligation to disclose material information to her insofar as he had an obligation not to lie under oath in deposition or at trial. She also asserts that the compulsory disclosure provisions of the New York Domestic Relations Law (N.Y.D.R.L. § 236(B)(4)) impose a duty that may substitute for fiduciary duty.

The defendants argue that an externally imposed duty of disclosure, such as the obligation not to lie under oath or the compulsory disclosure provisions of the statutory divorce scheme, cannot support a fraud claim, because such duties are imposed in precisely those situations where the personal obligation to protect the other person's interests is absent. They argue that apart from these externally imposed obligations, a litigant has no right to expect her opponent to disclose facts helpful to her case, and therefore cannot claim to be defrauded when the other party remains silent.

The defendants' arguments are persuasive. While Carl Capasso's alleged failure to answer truthfully at trial and deposition and his alleged failure to fulfill his disclosure obligations under the Domestic Relations Law might subject him to liability for perjury or obstruction of justice, in the absence of a fiduciary duty, a breach of statutory duty to disclose information does not constitute fraud. In *United States v. Gallant*, 570 F.Supp. 303 (S.D.N.Y.1983) the court held that the defendant's alleged failure to comply with his duty under copy-right law to disclose certain information was insufficient to subject him to prosecution under the mail and wire fraud statutes. In so holding, the court distinguished between a breach of a statutory duty and the breach of a fiduciary duty:

A statutory disclosure duty, as opposed to a fiduciary duty, does not protect a relationship that is based on trust. . . . Here the disclosure duty, which the government urges as a basis for a fraud, is not explicit and is not separate from the duty not to infringe copyrights. . . . In order to successfully maintain a mail fraud prosecution under the Second Circuit rule, in the absence of proof of affirmative misrepresentation, the government must prove that the defendant breached a duty to disclose separate from the commission of an otherwise criminal act.

*Gallant*, 570 F.Supp. at 308–09.

Similarly, in order to allege a valid fraud claim, Nancy Capasso must prove that the defendants breached a duty to disclose separate from the violation of a statutory duty.

There was no fiduciary duty here. During the divorce proceedings, Nancy Capasso demonstrated her distrust of Carl Capasso by thoroughly investigating his claims with regard to the value of his properties, offering expert testimony to dispute his claims, and asking the court to hold him in contempt for violating an order prohibiting him from dissipating the marital assets. None of this behavior is consistent with the trust and confidence that are the prerequisites for a fiduciary relationship. Accordingly, Mr. Capasso's failure to disclose the details of his business activities to Mrs. Capasso during and after the divorce proceedings cannot form the basis for a predicate act under RICO.

**B. Defendants' Actions Not Calculated to Damage Her Property**

Under *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his

business or property by conduct constituting the violation."

Nancy Capasso alleges three theories of damage to her property: 1) diversion of assets from NCC to other Capasso companies, 2) interference with her ability to collect her share of the marital property, and 3) expenditures for attorneys' fees and the costs of investigations. The defendants maintain that none of the three constitute a property interest for purpose of the predicate fraud statutes or, therefore, of RICO.

### 1) *Diversion of Assets From NCC*

■ The defendants argue that Nancy Capasso's claims have no merit because her complaint focuses on Carl Capasso's actions with regard to NCC and other properties that did not belong to her. The Appellate Division, in ruling on the Capasso divorce case, did not award her any interest in NCC itself but only provided that she be compensated for her spousal contribution to the success of the business by awarding her a 20% interest in the appreciation of NCC from the outset of the marriage until January 3, 1983, the date the divorce action was commenced. *Capasso v. Capasso*, 129 A.D.2d 267, 517 N.Y.S.2d 952, 963 (1st Dep't 1987). Accordingly, the defendants argue, her claim to have been defrauded by Carl Capasso's failure to keep her informed about his businesses after January 3, 1983 has no foundation. As to his failure to keep her informed before that point, the defendants maintain that prior to the commencement of the divorce action (as well as after), NCC was the property of Carl Capasso. The only interest that Nancy Capasso had in NCC was her possible expectation of a future award of a share of the profits of the business as marital property. The defendants argue that this interest is insufficient to support a fraud claim.

The law supports the defendants' position. In a similar case, *Pohlot v. Pohlot*, 664 F.Supp. 112, 116 (S.D.N.Y.1987), the court held that

> Plaintiff's mere expectation of a favorable decree awarding her a share of [her husband's] assets in the state court matrimonial action does not constitute a

property interest protected under RICO. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("... to have a property interest ... a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it...").

Accordingly, even assuming evil motivation on the part of the defendants, their conduct is not actionable because until Nancy Capasso had a property interest, they could not have injured it. Nancy Capasso's mere expectation that she might be awarded some share in her husband's property is too speculative to support a RICO claim.

### 2) *Attorneys' Fees and Investigative Expenses*

■ Nancy Capasso claims that she has been injured in her property by being forced to pay attorneys fees in the divorce action, the CIGNA and EAB indemnification and guaranty actions against her, and her actions against CIGNA and EAB to set aside their liens.

The defendants point out that attorneys' fees and costs of investigation incurred as a result of defendants' allegedly illegal acts do not qualify as RICO injuries. *See, e.g., Local 335, Hotel, Motel, etc. v. Pier 66 Co.*, 599 F.Supp. 761, 765 (S.D.Fla.1984); *Rylewicz v. Beaton Services, Ltd.*, 698 F.Supp. 1391, 1395-6 (N.D.Ill.1988), *aff'd*, 888 F.2d 1175 (7th Cir.1989).

Moreover, the Court of Appeals for the Second Circuit has held that to maintain a mail or wire fraud prosecution, "the deceit must be coupled with a contemplated harm to the victim. Moreover, the harm contemplated must affect the very nature of the bargain itself." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir.1987).

Here, it cannot reasonably be suggested that the harm contemplated by the alleged fraudulent scheme was an increase in Nancy Capasso's attorneys' fees. This case is readily distinguishable from *Malley–Duff & Associates, Inc. v. Crown Life Insur-*

*ance Co.*, 792 F.2d 341 (3d Cir.1986), *aff'd sub nom., Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 479 U.S. 983, 107 S.Ct. 569, 93 L.Ed.2d 573 (1987) and *Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496 (9th Cir.1985) which Mrs. Capasso cites for the proposition that litigation expenses in a prior litigation are available as damages under RICO. Those two cases concerned litigation expenses caused by alleged obstructions of justice in prior federal actions in violation of 18 U.S.C. § 1503, which constitutes a predicate act under RICO (18 U.S.C. § 1961(1)). The divorce proceeding was a state proceeding and therefore 18 U.S.C. § 1503 would not apply to any obstruction that may have occurred. Thus, none of Nancy Capasso's expenditures on fees constitutes injuries as a result of fraud or RICO.

### 3) "Judgment–Proofing"

■ Nancy Capasso alleges that Carl Capasso conspired with his bank and his bonding company to defraud her of her share of the marital property by placing encumbrances on the Capasso assets in the form of liens and judgments in favor of his creditors and attempting to hold her responsible as guarantor for the enormous debts of NCC.

The defendants respond that since no property interests of Nancy Capasso were affected, she cannot claim injury. The properties involved belonged at all times to Carl Capasso. Accordingly, any injury to Nancy Capasso arising as a result of liens and encumbrances on the properties would be an indirect injury and therefore not sufficient to support a RICO action. *Wooten v. Loshbough*, 738 F.Supp. 314, 317 (N.D. Ind.1990) (plaintiff had no standing to bring RICO action against principals of company based on allegations that diversion of company funds left company unable to satisfy her judgment; "The defendants plundered Federal Press, not Ms. Wooten"); *Rylewicz v. Beaton Services, Ltd.*,

888 F.2d 1175, 1179 (7th Cir.1989) (RICO injuries must be direct intended result of predicate acts). The defendants argue that any harm caused to Nancy Capasso by the defendants was merely a derivative consequence of legitimate attempts of NCC's creditors to recover their losses.[2]

The defendants also point out that Nancy Capasso's rights to the properties to which the bank and bonding company also lay claim are presently in dispute in a pending state court action which she brought. The defendants argue that prior to any definitive ruling in those cases, the characterization of Carl Capasso as "judgment-proof" is meaningless. They claim that the injury allegedly caused by the judgments and liens is not actionable and in any event too speculative to support a RICO claim because her rights in the property and against Carl Capasso have not yet been determined by the state courts. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir.1988) (RICO cause of action does not accrue until plaintiff has suffered injury).

However, even if Nancy Capasso were able to demonstrate that she has suffered injury as a result of the liens and judgments, those actions do not by themselves constitute fraud. While the liens and judgments in favor of the bonding company and the bank will likely make it more difficult for Nancy Capasso to collect the money she was awarded in the divorce case, none of the facts she has alleged provide a basis for believing that the companies were acting out of any motivation other than economic self-interest. Given that all of the defendants, including Carl Capasso, have economic interests which are adverse to those of Nancy Capasso, it is reasonable to expect that they have in the past and probably will in the future take actions which impair her economic interests. The question to be resolved here is whether she has articulated any basis for her allegations that the defendants took these actions with an intent to defraud her; the facts alleged

**2.** The initiation of a legal action cannot constitute a predicate act under RICO. *See, e.g., Von Bulow v. Von Bulow*, 657 F.Supp. 1134 (S.D.N.Y. 1987) (malicious prosecution may not constitute RICO predicate act).

in the complaint do not support that claim. The Capasso creditors had no obligation to forgo their own interests in order to allow Nancy Capasso to collect what she claims is her share of the Capasso assets, nor was Carl Capasso obligated to favor Nancy's interests over those of his other creditors. Because she has not alleged facts sufficient to support a claim of fraud, her complaint must be dismissed.

In sum, the claims made in this case fall short of the RICO target. They are a strained effort to put a square peg in a round hole. This disposition eliminates the need to discuss the defendants' arguments that the claims are barred by the doctrine of res judicata and by the statute of limitations, but leaves Nancy Capasso free to return to state court to pursue her claim that the state court was defrauded as she alleges.

The defendants' motions to dismiss are granted.