Jerome H. LEMELSON

v.

WANG LABORATORIES, INC., Data General Corporation, and Apollo Computer, Inc.

Civ. A. No. 90–11338–RGS.

United States District Court,
D. Massachusetts.

May 26, 1994.

Jerry Cohen, Perkins, Smith & Cohen, Boston, MA, Larry Selander, Keck, Mahin & Cate, Chicago, IL, for plaintiff Patent Incentives, Inc.

David R. Melton, Wayne L. Tang, Michael O. Warnecke, Keck, Mahin & Cate, Chicago, IL, for plaintiff Jerome H. Lemelson, as party successor to Patent Incentives, Inc.

Paul J. Hayes, Stanley M. Schurgin, Victor B. Lebovici, Craig K. Leon, Weingarten, Schurgin, Gagnebin & Hayes, Boston, MA, for defendant Nixdorf Computer Corp.

Dale A. Malone, Michael H. Shanahan, Charles G. Call, Allegretti & Witcoff, Ltd., Paul F. Ware, Scott L. Robertson, Anthony S. Fioto, Goodwin, Proctor & Hoar, Boston, MA, for defendant Wang Labs, Inc.

Sewall P. Bronstein, Robert F. O'Connell, Dike, Bronstein, Roberts & Cushman, Boston, MA, Douglas E. Whitney, Jack B. Blumenfeld, Julia Heaney, Matthew B. Lehr, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for defendant Data General Corp.

William F. Lee, Hale & Dorr, Boston, MA, Jonathan A. Marshall, Pennie & Edmonds, New York City, for defendant Apollo Computer, Inc.

### MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO DISMISS RICO COUNTERCLAIM AND DEFENDANT DATA GENERAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS

STEARNS, District Judge.

Lemelson's Amended Complaint alleges that Wang Laboratories, Inc. ("Wang"), Data General Corporation ("DG") and Apollo Computer, Inc. ("Apollo") have infringed four of his many U.S. patents. Defendant DG by way of a RICO counterclaim asserts that Lemelson and his agents have, through acts of mail and wire fraud, unlawfully exploited the U.S. patent system by using it to extort money through threat of legal action. Lemelson seeks dismissal of DG's RICO claims. DG asks that Lemelson's Complaint be dis-

missed for failure to prosecute, or alternatively, that it be granted partial summary judgment for laches.

## BACKGROUND

In May 1990, Patent Incentives, Inc., filed this action alleging infringement of its patents Nos. 239, 462, 163, and 645.[1] The Amended Complaint specifies a number of the defendants' products that allegedly incorporate technology protected by one or more of Lemelson's patents.[2] In mid–1990, this action was stayed pending Patent and Trademark Office ("PTO") reexamination proceedings. After the PTO's rescission of the stay, Wang and Apollo settled with the plaintiff. On April 16, 1993, Lemelson was substituted for Patent Incentives as the successor to its interest in the patents at issue.[3]

### Plaintiff's Motion to Dismiss Defendant Data General's RICO Counterclaim

I will first address plaintiff's motion to dismiss DG's RICO counterclaim.[4] Under Fed.R.Civ.P. 12(b)(6), in reviewing a motion to dismiss the court accepts all well-pled factual averments as true, and draws all reasonable inferences in the nonmovant's favor. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 276, 96 S.Ct. 2574, 2576–77, 49 L.Ed.2d 493 (1976); *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). While the plaintiff is obligated to set forth in the complaint "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," the court should dismiss the claim only if no set of alleged facts would entitle the plaintiff to recovery. *Gooley,* supra at 515. See also *Conley v. Gibson,* 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957).

To state a civil RICO claim, the plaintiff must allege (1) an injury to its business or property (2) caused by the defendant's involvement in an enterprise (3) engaged in a pattern of racketeering activity or the collection of an unlawful debt.[5]

■ *Injury*—DG alleges that there were unwarranted delays in issuing Lemelson's patents because of a scheme devised by Lemelson to continuously revise his patent applications by generalizing their technological concepts and enlarging their scope of application. By deliberately prolonging the "filing to approval" process, DG contends that Lemelson empowered himself with patent claims against many large manufacturing companies that adapted to various products the general technology recited in his patents.[6] DG alleges that Lemelson has used litigation of these claims to extort millions of dollars from U.S. and international companies. DG claims that its injury stems from the investigations it has been forced to undertake to determine the validity of Lemel-

---

1. Lemelson holds nearly 500 patents. Many of Lemelson's patent applications were filed in the period from late 1950 to early 1970. DG argues that it is significant that Lemelson has never used a patent to create an invention.

2. Plaintiff claims that Wang infringed on these patents in the manufacture of its Pic Image Processing System, WP Plus System, Open/Image Software, Wang Integrated Image System, VS Mid Range Computer, and Wang RISC Series. Plaintiff's claims against Data General are based on the Dasher/286 Intelligent Work Station, Dasher/386–25 Unix System, Aviion Work Station, and AVImage Software. Plaintiff makes similar claims regarding Apollo's Domain System Workstations DN660A, DN660, DN560, DN460, DN330 and DN300.

3. In a March 31, 1994 hearing, plaintiff withdrew a motion to substitute the Lemelson Foundation as the named plaintiff.

4. Lemelson argues that DG has failed to plead an injury warranting relief, predicate acts constituting a pattern of racketeering, or a distinct RICO enterprise, all essential elements of a RICO claim. In response, DG states that the effects of this lawsuit on DG's business and property is a compensable injury. DG also contends that the predicate acts under RICO are the enterprise's participation in acts of mail and wire fraud in furtherance of an illegal scheme to exploit fraudulently obtained patents by, among other things, coercive enforcement of those patents.

5. RICO is codified at 18 U.S.C. §§ 1961–1968.

6. Typically a patent expires in seventeen years and free use ensues. 35 U.S.C. § 154.

son's claims, and the costs of defending itself against Lemelson's extortionate litigation.[7]

The United States Supreme Court has held that a RICO injury must be proximately caused by a RICO violation. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).[8] The persuasive authority holds that where legal fees are expended as an intended consequence of a defendant's racketeering activities, those fees may constitute RICO damages. See *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2nd Cir. 1993) (upholding district court's award of attorneys' fees expended to defeat defendant's efforts to obstruct the collection of adverse judgments); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105–1106 (2nd Cir.1988) (allowing recovery of attorneys' fees incurred in exposing a fraudulent bankruptcy); *Malley–Duff & Associates, Inc. v. Crown Life Insurance Co.*, 792 F.2d 341, 354–355 (3d Cir.1986) ("great expenses, delays and inconvenience" incurred in prosecuting a civil action over the obstructive tactics of defendant "were a sufficient pleading of injury to business or property to give [plaintiff] RICO standing"). Cf. *Hall American Center Association v. Dick*, 726 F.Supp. 1083, 1097 (E.D.Mich.1989) (the filing of a lawsuit as part of a scheme to extort property may constitute a predicate act under RICO). See generally, D. Abrams, *The Law of Civil RICO* at 124–127 (1991). In the cases cited by plaintiff, litigation (or its threat) was neither an instrument of the racketeering activity nor a harm intended to the victim. As the court pointed out in *Capasso v. CIGNA Ins. Co.*, 765 F.Supp. 839, 842 (S.D.N.Y.1991) (distinguishing *Malley–Duff*, supra), "[I]t cannot reasonably be suggested that the harm contemplated by the alleged fraudulent scheme was an increase in [plaintiff's] attorneys' fees." See also *Doe v. Roe*, 756 F.Supp. 353, 359 (N.D.Ill.1991)

("[E]conomic aspects of personal injuries and injuries incidental to the racketeering acts are not compensable under RICO"). By contrast, DG alleges that the taxing of victims with the prospects of vexatious litigation is an integral component of the racketeering scheme. Where, as here, the institution of a lawsuit is alleged to be an instrument of racketeering activity, I hold that the costs incurred in investigating and defending that litigation are a sufficient RICO injury to satisfy the indulgent pleading requirements of Rule 12(b)(6).

■ 2. *Enterprise*—RICO broadly defines enterprise to "include any individual, partnership, corporation, association, or other legal entity, and union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has given the term "association" a broad definition. It embraces both legitimate and illegitimate enterprises. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The unlawful enterprise must, however, be an entity distinct from the defendants charged with the conduct of its affairs. See *Arzuaga–Collazo v. Oriental Federal Sav. Bank*, 913 F.2d 5, 6 (1st Cir.1990). DG alleges in its counterclaim that Lemelson, his agents, his attorneys, the corporate entities under his control, and others, constitute an enterprise associated for the purpose of coercive patent enforcement through a pattern of frivolous lawsuits. For the purposes of Fed. R.Civ.P. 12(b)(6), this association-in-fact satisfies the Supreme Court and First Circuit's specifications regarding a RICO "enterprise."

**7.** The plaintiff cites several cases which hold that attorneys' fees cannot be deemed a RICO injury. See *Capasso v. CIGNA Ins. Co.*, 765 F.Supp. 842–843 (S.D.N.Y.1991); *Doe v. Roe*, 756 F.Supp. 353, 359–360 (N.D.Ill.1991), *aff'd*, 958 F.2d 763 (7th Cir.1992); *Local 355, Hotel, Motel, Restaurant, & Hi–Rise Employees and Bartenders Union v. Pier 66 Co.*, 599 F.Supp. 761, 765 (S.D.Fla.1984). Plaintiff also presented the court with a copy of *Universal Manufacturing Company v. Douglas Press, Inc.*, No. 89–3354, 1991 WL 83156, 1991 LEXIS 6279 (N.D.Ill.1991) as a case

directly on point. I find these cases distinguishable, as will be explained.

**8.** To resolve a conflict in the circuits, the Supreme Court recently ruled that RICO does not require proof that either the enterprise or the predicate acts were motivated by an economic purpose. See *National Organization of Women, Inc. v. Joseph Scheidler*, —— U.S. ——, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

■ 3. *Pattern of Racketeering Activity*—Racketeering is a criminal act.[9] In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court gave definition to what constitutes a "pattern" of activity for purposes of a civil RICO violation. The Court stated that "sporadic activity" was not the target of RICO. "The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." Id. at 500, 105 S.Ct. at 3285. Four years later in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Court amplified the *Sedima* definition. Justice Brennan, writing for the majority, held that "Congress envisioned that no more than two predicates would be necessary to establish a pattern of racketeering, however, while two acts are necessary, they may not be sufficient.... liability depends on whether the *threat* of continuity is demonstrated." *Id.* at 237–242, 109 S.Ct. at 2899–2902 (emphasis in the original).

DG contends that the plaintiff has extorted millions of dollars in settlement monies through a pattern of litigation involving infringement claims based on fraudulently obtained patents. DG alleges that the predicate acts are the enterprise's repeated and continuing use of the United States mails and the interstate use of the telephone wires to further of this extortionate scheme. DG's RICO counterclaim meets the threshold requirements of Fed.R.Civ.P. 12(b)(6) and the plaintiff's motion to dismiss will be *DENIED.*

### DG's Motion For Partial Summary Judgment on Laches, Motion to Dismiss For Failure To Prosecute, and Motion To Dismiss for Lack of Standing

■ *Laches*—To prevail on laches, DG must demonstrate that the plaintiff: (1) delayed filing suit for an unreasonable length of time after becoming aware (or being put on notice) of its claim; and (2) that the delay caused prejudice or injury to the defendant. A prima facie defense of laches is established when the alleged infringer demonstrates that the patent holder had knowledge of the infringement and delayed six years or more in filing suit. See *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1037 (Fed. Cir.1992). Lemelson admits in his interrogatories that he and his attorneys first concluded that DG was infringing on Lemelson's patents in 1982.[10] Lemelson waited until 1990 to file a patent infringement suit against DG. This more than six year delay establishes a prima facie laches defense to Lemelson's action.[11]

■ A showing of justified delay or the lack of prejudice to a defendant overcomes the presumption of laches. *A.C. Aukerman Co.*, supra at 1038. Lemelson argues that his failure to file suit was excused because of ongoing negotiations with DG. Attached to his opposition to DG's motion, Lemelson presents correspondence dated March 1982, November 1 and 16, 1984, April 1985 and May 1988, in which counsel for Patent Incentives/Lemelson attempted to initiate negotiations of a license agreement with DG regard-

---

9. "Racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the certain provisions of title 18 United States Code: namely Section 1341 (relating to mail fraud), and Section 1343 (relating to wire fraud); (C) any act which is indictable under Title 29, United States Code; (D) any offense involving fraud connected with a case under Title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States,

or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act.

10. See Exhibit B to Memorandum In Support Of Data General Corporation's Motion For Partial Summary Judgment.

11. It must be emphasized that the establishment of the factors of undue delay and prejudice, whether by actual proof or by operation of the presumption, does not mandate recognition of the laches defense in every case. A judgment on grounds of laches remains within the equitable discretion of the trial court in light of all the circumstances. *A.C. Aukerman Co.*, supra at 1036.

ing the patents in question.[12] Apparently the parties met in April 1985 and Lemelson's counsel presented DG with a detailed claims analysis of the patents which Patent Incentives asserted were infringed upon by DG's personal computers. The tone of Patent Incentives/Lemelson's communications did not turn litigious until May 1988. Lemelson also claims that during the 1982–1988 period, Patent Incentives had litigation pending with Seiko–Epson, Hyundai and Epson America, Inc. Viewed in a light most favorable to the plaintiff, I find that the ongoing correspondence between the parties, the tone of the initial correspondence, and Patent Incentives' preoccupation with ongoing patent litigation excuses its admittedly leisurely efforts to vindicate its claims against DG. See *Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed.Cir. 1992) (holding that delay caused by negotiations with other parties for licenses is not unreasonable). Consequently any presumption of laches is undone.

Moreover, Lemelson contends that his delay in filing this lawsuit has not resulted in any prejudice to DG. Prejudice to a defendant stemming from delay "may be a change in economic position or loss of evidence." *A.C. Aukerman Co.*, supra at 1043. There is no evidence before the court that DG because of the delay has changed its product or output, or paid any monies to Lemelson in licensing fees. The volume of document production tends to counter any possible suggestion that material evidence has been lost. Accordingly DG's Motion for Partial Summary Judgment on Laches will be *DENIED*.

 *Failure to Prosecute*—The First Circuit permits dismissal of an action for failure to prosecute only when the plaintiff's misconduct is extreme and no lesser sanction than dismissal would be appropriate. See *Enlace Mercantil Internacional v. Senior Industries*, 848 F.2d 315, 317 (1st Cir.1988). The First Circuit defines "extreme misconduct" as either "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance ... [like] prejudice to the de-

fendant, glaring weaknesses in the plaintiff's case, and the wasteful expenditure of a significant amount of a district court's time." *Id.*

A review of the docket indicates that this action was stayed for a brief time by Judge Keeton in June 1990 pending the PTO reexamination of the patents in suit. After the stay was lifted, three of the original four defendants eventually settled with Lemelson. The voluntary dismissals indicate ongoing negotiations between the plaintiff and the departing defendants. Moreover, Lemelson represents that numerous documents have been exchanged with DG. In sum, the record does not indicate "extreme misconduct" on Lemelson's part requiring dismissal. Consequently, DG's motion to dismiss for failure to prosecute will be *DENIED*.

### *Wang's Motion to Extend Discovery Schedule*

In light of Wang's departure from this case, this motion is moot. Regardless, I request that the parties consider these rulings and jointly submit a revised discovery schedule within 30 days of this *ORDER*.

### *ORDER*

(1) Plaintiff's Motion to Dismiss Data General's RICO Counterclaim is *DENIED*.

(2) Data General's Motion for Partial Summary Judgment for Laches is *DENIED*.

(3) Data General's Motion to Dismiss for Failure to Prosecute is *DENIED*.

SO ORDERED.

---

**12.** This correspondence and several letters from DG to Lemelson's counsel subsequent to May 1988 indicate that there was further contact of a sporadic nature between the parties.