USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2082 ANNETTE B. DeMAURO, Plaintiff, Appellant, v. JOSEPH M. DeMAURO, EDWARD MARTIN, DeMAURO CO., INC., NICHOLAS DeMAURO, TRI-AREA DEVELOPMENT CO., INC. and JOAN MARTIN, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ____________________ Before Boudin, Circuit Judge, Bownes, Senior Circuit Judge, and Lynch, Circuit Judge. ____________________ S. James Boumil for appellant. Kathleen M. Morrissey with whom Bernard A. Dwork, Roger T. Manwaring, Barron & Stadfeld, P.C., Richard L. Fox and Carragher & Fox were on brief for appellees Edward Martin, DeMauro Co., Inc., Nicholas DeMauro, Tri-Area Development Co., Inc. and Joan Martin. ____________________ June 11, 1997 ____________________ BOUDIN, Circuit Judge. In this case, one of the participants in a pending divorce action has invoked the federal racketeering statute to challenge asset transfers by her spouse. The district court responded by dismissing the complaint without prejudice on abstention grounds. Because dismissal was on the pleadings, we assume the truth of statements in the complaint, cautioning that they have yet to be proved. Annette and Joseph DeMauro were married in 1979. Joseph worked  in  the construction business and, according to Annette, earned "millions of dollars," promising to share monies with Annette. But the marriage proved less successful than his business. The couple separated, and in 1994, Annette--a New Hampshire resident--sued for divorce in New Hampshire state court. The divorce action has been a bitter and prolonged contest. At various times, Joseph has refused to pay spousal support  orders (which total more than $250,000), has failed to appear for court proceedings, has resisted discovery requests concerning his income and property interests by invoking the Fifth  Amendment,  and  has  been held in contempt of court. After more than two years, the divorce action remains unresolved. In  May  1996,  Annette  filed the instant suit in the federal district court in Massachusetts. The complaint named Joseph and  five  other defendants: Joseph's 42-year-old son, Nicholas -2- -2- DeMauro; Joseph's sister and brother-in-law, Joan and Edwar ons allegedly controlled by Joseph and icholas--DeM auro Co., Inc. and Tri-Area Development Co., Inc. Joseph d Martin;  and  two  corporati N was alleged to have a residence in Massachusetts and both corporations had offices in the state. The  complaint  set  forth  a RICO claim for civil conspiracy, 18 U.S.C. S 1961 et seq., specifying predicate racketeering acts of (1) mail fraud, 18 U.S.C. S 1341, (2) wire fraud, 18 U.S.C. S 1343, and (3) "extortionate threats," 18 U.S.C. S 1951. The complaint also alleged pendent state-law claims1 for intentional infliction of emotional distress, breach of fiduciary  duty,  conspiracy, fraudulent conveyances, and illegal telephone recordings. In  support  of the RICO claim, the complaint charged inter alia that Joseph and the other defendants fraudulently concealed  from  Annette  separate and marital property to prevent her  from  sharing in these assets. Annette alleged that Joseph and the other defendants by means of false pretenses, representations, and devices established bank and investment accounts in Switzerland, [the] Middle East, France, Liechtenstein, several states of the United States and  various  and sundry other locations most of which accounts  were established under the names of straws, sham trusts, shell companies and phony     1 Diversity  jurisdict ion was not available because although Joseph  is  apparently not a New Hampshire resident, Annette and the Martins are New Hampshire residents, thus defeating the complete  diversity  requirement. Casas Office Machines, Inc. v. Mita  Copystar America, Inc., 42 F.3d 668, 673 (1st Cir. 1994). -3- -3- "foundations, " all designed to conceal the location, extent, and existence of assets from [Annette] and persons with whom [Joseph] did business. The alleged activity was undertaken not by Annette's husband  alone,  but  also  by others who comprised an alleged RICO "enterprise," and it involves alleged concealments "well in excess  of  a  million dollars." And, allegedly, Joseph not only threatened to deprive Annette of assets but also boasted that he had bribed foreign officials to secure himself a false identity and foreign passport. In June 1996, all the defendants except Joseph moved to dismiss  the  suit  on  various grounds, including lack of standing to  bring  RICO claims and failure to plead fraud with requisite particularity,  Fed.  R.  Civ. P. 9(b). Joseph did not join these motions because he had not yet been served process, despite efforts  by  Annette  to  locate and serve him. Joseph was finally served with process while appearing involuntarily in New Hampshire state court, having been arrested and brought there for a hearing on his failure to pay ordered spousal support. On July 26, 1996, the district judge issued a seven-page order.   He  expressed  doubt whether Annette had shown a property interest protectible under the civil RICO statute; but he ultimately did not decide this issue and instead dismissed without  prejudice Annette's claims against all the defendants. The dismissal was based upon the doctrine of abstention established in Burford v. Sun Oil Co., 319 U.S. 315 (1943). -4- -4- Rather than staying the federal proceedings, the court dismissed, noting that Annette could replead if and when she can show a "property" right which . . . has been denied her by the defendants' allegedly illegal transfers--that is, after the resolution of the divorce action and the attendant allocation of marital assets. The parties had not addressed the possibility of abstention  in  their  filings. In August 1996, Annette moved for reconsideration, arguing that abstention was not proper and that, if it were proper, the court should stay proceedings rather  than  dismissing  the action. The court denied her motion without comment. Annette now appeals. 1. For reasons that will become evident, we begin with the threshold issue bypassed by the district court, namely, whether the plaintiff has made out a claim of "injury" to her "business  or  property,"  as is required for a civil RICO damages action. 18 U.S.C. S 1964(c). This is sometimes described as a "standing" issue. There is plainly a case or controversy under  Article III; but the statutory precondition of injury to business or property must also be met. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). One might think it obvious that a precondition in a federal  statute  would  be  defined uniformly by federal law. Cf. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 147-49 (1987) (civil RICO statute of limitations). This is especially so where the same phrase--injury to business or -5- -5- property--is also a long-standing requirement under section 4 of the Clayton Act, 15 U.S.C. S 15(a). Yet, the RICO precedents are filled with references to state property law, which is often said to govern by implicit cross-reference. E.g., Doe v. Roe, 958 F.2d 763, 768 (7th Cir. 1992) (citing cases). Some role does exist for state law. There is no general federal law of property transfers, so the question who owns a piece  of  property  is  likely to be settled by state law. On the other hand, one might expect federal law to decide whether a given  interest, recognized by state law, rises to the level of "business  or  property,"  or whether "injury" has been done to it by  the  acts  alleged.2 Where to set the "business or property" threshold depends on federal statutory purpose, and that purpose is likely to support a definition that is uniform throughout the country. In all events, the assets that Annette ultimately claims to have been concealed are "property" by any definition: the complaint  alleges fraudulent concealment and transfers of real property  and  bank account funds by Joseph. One difficulty--so far as we can tell from the undeveloped record--is that most (perhaps all) of this property may have been held from the     2 E.g. ,  A ssociated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 529-45 (1983) (examining the meaning of "injury" under section 4 of the Clayton Act); compare Roma Constr. Co. v. aRusso, 96 F.3d 566, 579-80 n.10 (1st Cir. 1996) (Lynch, J., concurring). -6- -6- outset in Joseph's name or in the name of others such as foundations  that he controls. The complaint also implies that most  (perhaps all) of the underlying assets were the result of the success of Joseph's construction business. New  Hampshire  is  not  a  community property state, see Baker v.  Baker ,  421 A.2d 998, 1000 (N.H. 1980), and much of the real property and monies described in the complaint may not yet be Annette's property. To this extent, what Annette has is an expectancy: in the divorce proceedings, some or much of this property may be awarded to Annette. State law provides for "equitable division" in divorce actions of "all tangible and intangible property and assets . . . belonging to either or both  parties,  whether  title to the property is held in the name of either or both parties." N.H. Rev. Stat. Ann. S 458:16-a. An equal division is presumptively equitable. Id. S 458:16- a(II). If the real and other tangible property, or most of it, belongs  to  Joseph,  can  it still be said that Annette's divorce- suit claim to a share is also "property" protectible by RICO? Possibly so. Some precedent, at least under the Clayton Act, extends  protection  to  intangibles under certain circumstances.3 3E.g., E.A. McQuade Tours, Inc. v. Consolidated Air Tour Manual  Comm., 467 F.2d 178, 184 (5th Cir. 1972), cert. denied, 409 U.S. 1109 (1973) (contracts are "property" under the Clayton Act); cf. Logan v. Zimmerman Brush Co., 455 U.S. 422, 430-33  (1982) (right to use adjudicatory procedures created by state  Fair  Employment Practices Act is "property" protected by the Due Process Clause). -7- -7- But even if we assume arguendo that Annette's claim is itself protected property, the question remains whether Joseph's alleged efforts to conceal what is still his property (real property and cash) has "injured" Annette's property (her inchoate claim). Certainly, Annette may be worse off because of the concealment;  but her legal claim remains intact, together with various  remedies directed at concealment of assets. (In fact, she has already obtained attachments in state court totalling $33  million  on property owned partly or solely by Joseph.) No one  knows  what  Annette  will be awarded in the divorce action or whether Joseph's alleged efforts to conceal will hamper her ability to collect. In sum, any claim of present "injury" to her  claim  is  speculative, so long as we are concerned with the movement of real property or cash that for now belongs to Joseph. Pertinent here is a decision of this court upholding dismissal of a civil RICO claim brought by a plaintiff who alleged injury based on a "hypothetical inability to recover" if it won its pending contract lawsuit against the defendant. The  defendant  had  allegedly made fraudulent transfers of assets to his wife; but we held that the RICO claim was not ripe for adjudication because the claimed injury was too speculative. -8- -8- Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990). This and like decisions4 seem directly on point. To be sure, there is a certain arbitrariness in drawing the line here. But while RICO is to be construed broadly, Sedima, 473 U.S. at 498, "injury to property" is not an infinitely  elastic  concept. And in cases like this, it is hard to  see  how  a  court would calculate damages now, given the dual uncertainties of what Annette will be awarded and how it will be  affected  by concealment. See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994), cert. denied, 115  S.  Ct.  728 (1995) ("[A]s a general rule, a cause of action does  not  accrue under RICO until the amount of damages becomes clear and definite."). This conclusion--that Annette has not adequately alleged injury to her property--applies only to the extent that the concealed property currently belongs solely to Joseph or others. However, the complaint also asserts that Joseph has sought to conceal "marital" or "separate" property. To the extent that Annette is claiming a present ownership interest, she appears to be asserting injury to her property within the terms  of  the  RICO  statute. Cf. Grimmett v. Brown, 75 F.3d 506, 4See Barnett v. Stern, 909 F.2d 973, 977 n.4 (7th Cir. 1990); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir. 1988), cert. denied, 490 U.S. 1007 (1989); Capasso v. Cigna Ins. Co., 765 F. Supp. 839, 842 (S.D.N.Y. 1991). -9- -9- 516-17  (9th  Cir.),  cert.  granted, 116 S. Ct. 2521 (1996), cert. dismissed, 117 S. Ct. 759 (1997). Admittedly, Annette's allegations of ownership are confusing  and  in  certain  respects lack supporting detail. They certainly could be explored through inquiry and discovery and could be tested, if doubtful, by a motion to dismiss or by summary judgment. Still, on the present pleadings the possibility remains that Annette already owns some of the property allegedly concealed by Joseph and others. On that premise, we turn to the issue of abstention. 2.   We  note  at  the  start  that the district court's remedy- -dismissal  on  abstention  grounds--is not permissible. Just two months  before  the  district court issued its ruling, the Supreme Court  held  that abstention, under Burford or otherwise, may be appropriate  in  suits  for  damages. Quackenbush v. Allstate Ins. Co. ,  116  S.  Ct. 1712, 1728 (1996). But the Court further held that in a damages action, the district court may only order a stay  pending  resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether. Id. The rationale of Quackenbush is that damages actions, unlike suits for equitable relief, do not invoke the court's equitable  discretion. Id. at 1727. This rule may seem rather wooden,  given  the  merger  of law and equity, but the Court means what  it  says:   Quackenbus h held that the dismissal of a damages action on Burford grounds was reversible error, without -10- -10- deciding whether "a more limited abstention-based stay order would have been warranted on the facts of this case." Id. at 1728. There is no question that the present RICO claim is primarily a damages action. See complaint, qq 62-67. It is uncertain  whether  equitable relief is even available to private plaintiffs under civil RICO. Lincoln House, 903 F.2d at 848. The question remains whether the district court has authority  at  least  to  stay Annette's federal suit on abstention grounds, pending resolution of the New Hampshire divorce proceeding. In that proceeding, the state court might determine what property is currently owned by Annette. See N.H.  Rev.  Stat. Ann. S 458:16-a(II). For this reason, another district court--cited by the district court in this case--has abstained  from adjudicating a federal RICO action brought by a spouse involved in pending divorce proceedings. Farkas v. D'Oca, 857 F. Supp. 300, 303-04 (S.D.N.Y. 1994). See also Dibbs v. Gonsalves, 921 F. Supp. 44, 52 (D.P.R. 1996). This  is  not  a  wholly  persuasive reason given New Hampshire law's stress on an equitable division of all the parties' property.   The  New  Hampshire decree may just as well not decide who owned specific property prior to the divorce: its main concern  is  with who will own what after the divorce. And, the Supreme Court has discouraged abstention based solely on the ground that a related state court action may address similar issues, Colorado River Water Conservation Dist. v. United -11- -11- States ,  424  U.S.  800,  817 (1976), with only limited exceptions, e.g., Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).  A more plausible basis for abstention is the possible interference  that a civil RICO action at this time might cause to the state court's decision as to how to divide property in the divorce. The so-called domestic relations exception does not preclude federal courts from adjudicating tort actions merely  because the parties were married and are in the process of  divorce.   Ankenbrandt  v. Richards, 504 U.S. 689, 704 (1992). But this case is not just a tort action between divorcing parties:   the  civil  RICO  claim is directed to the same property that is going to be allocated between the parties as a result of the decree. Cf. Colorado River, 424 U.S. at 819. In  this  instance,  the  state court may be unlikely to award Joseph any interest in property now owned solely by Annette, but that is hardly so clear with respect to property owned jointly. Suppose Annette were awarded the value (or three times  the  value)  of  disputed jointly owned property in the RICO case  and  the  state  court  then determined that the same property ought to be allocated to Joseph. At the very least, there is a possibility of conflict between judgments, requiring one of them to be modified to take account of the other. Otherwise, the state divorce decree's intended allocation of property could easily be frustrated. -12- -12- Another  potential  conflict is Annette's expressed interest in  seeking  interim  relief from the federal court, presumably by way  of  provisional  attachments or other ad litem remedies. Cf. Fed. R. Civ. P. 64; Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 53 (1st Cir. 1986). The federal court's ability to reach and freeze out-of-state property may well be greater than the New Hampshire divorce court's. At the same time, interim allocations of property are standard fare for divorce courts, and the obvious potential for interference with this function is an extremely serious matter. Our  case,  and those kinds of threatened interference, are not a perfect fit with the Burford doctrine. There, the Supreme Court approved abstention to avoid conflict with a comprehensive state regime of business regulation.5 But abstention  doctrines are not "rigid pigeonholes," Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 11 n.9 (1987), and the ultimate question is whether there are "exceptional circumstances" in which abstention "would clearly serve an important . . . interest."   Colorado  Rive r, 424 U.S. at 813 (citation omitted). Such an interest is potentially present here. See also Minot v. Eckardt-Minot, 13 F.3d 590, 593-95 (2d Cir. 1994). 5Burford, 319 U.S. at 326 (allocation of oil drilling rights).   See also Alabama Public Serv. Comm'n v. Southern Ry. Co. ,  341  U.S. 341, 346-48 (1951) (scheduling of local railroad service);  All state Ins. Co. v. Sabbagh, 603 F.2d 228, 229 (1st Cir. 1979) (setting of automobile insurance rates). -13- -13- Not  only  divorce, but the allocation of property incident to a divorce, are longstanding local functions governed by state law. Ankenbrandt, while curtailing the domestic relations  exception,  nevertheless made clear the priority given the state resolution of family law issues, including alimony determinations. 504 U.S. at 704, 706. See also Friends of Children, Inc. v. Matava, 766 F.2d 35, 37 (1st Cir. 1985). Divorces  are  frequently  accompanied by disputes about property, including  both  interim  and final allocations. Such state court authority  would be threatened if civil RICO actions become the shadow proceeding for policing such disputes. We conclude that abstention by use of a stay may be permissible  where  a  RICO  action is directed against concealment or transfer of property that is the very subject of a pending divorce  proceeding.   The  divorce proceedings might or might not resolve the federal dispute--there are many possible permutations and plenty of unanswered legal questions. But staying the federal RICO claim will reduce the risk of interfering with interim state allocations and permit the federal court to tailor any final federal judgment to avoid undermining the divorce court's allocation of property.  3. While abstention may be permissible, it cannot be automatic in a case of this kind. A decision to abstain requires not only that certain preconditions be met, but also that  the  district  court  reasonably find that such abstention is -14- -14- appropriate in the case at hand.6 Of course, this may not be much of an issue when the particular abstention rubric itself resumes  stro defendant seeks a federal injunction interfering with an ongoing state criminal trial. Younger, 401 U.S. at 45, 54. Cases  like  the  present  one differ markedly from situations like Younger. Not only do we have far less experience with p ngly in favor of abstention--for example, where a civil RICO actions that overlap divorce proceedings, but extreme  variations can be imagined both as to underlying facts and equitable concerns. Certainly in some instances a civil RICO claim might be so plausible and so distinct from an ordinary divorce action property dispute as to undermine any argument for a stay; or even if a trial were stayed, there might be a compelling argument for interim relief to protect the plaintiff's right to ultimate relief in the RICO action. In sum, abstention here is a possible, but not a mechanical  answer.   The  district court's judgment cannot stand, simply  because it conflicts with Quackenbush. Nor do we think that the dismissal on abstention grounds can simply be transformed into a stay; such a stay might in the end be equitably justifiable, but not without giving the parties a 6See Quackenbush, 116 S. Ct. at 1726-28; Colorado River, 424 U.S. at 818; Younger v. Harris, 401 U.S. 37, 54 (1971); Bath  Memorial Hosp. v. Maine Health Care Fin. Comm'n, 853 F.2d 1007,  1015  (1st  Cir.  1988); Friends of Children, Inc., 766 F.2d at 37. -15- -15- chance to address the matter and not without an appraisal by the court that goes beyond the possible overlap in issues. In  making  such  an  appraisal, the district court is free to consider the plausibility of this civil RICO claim as a freestanding cause of action, the actual threat in this case for  conflict  between such a suit and the pending state divorce action, any threat of immediate harm associated with alleged ongoing civil RICO violations, and other consequences or concerns  that make it equitably reasonable to accelerate or to defer consideration of federal relief. Once the pertinent factors are mustered and assessed, the district court's exercise of judgment is normally respected. Friends of Children, Inc., 766 F.2d at 37. The district court has no obligation to pursue the abstention issue at all if the matter can be disposed of more appropriately on other grounds. Motions to dismiss have been made for lack of standing (an issue discussed above), for failure to plead fraud with particularity, and for other reasons. Possibly, further exploration will reveal that Annette  has  no standing as to any of the property in question. In all events, the order in which to consider issues is a matter for the district judge. The treatment of the pendent state claims depends, in turn, on the outcome of the inquiries just described. If the district court finds no basis for a claim of injury to -16- -16- property,  presumably  it  will dismiss the pendent claims without prejudice. See 28 U.S.C. S 1367(c)(3). If it determines to stay the civil RICO claim on abstention grounds, then the treatment of the pendent claims is less clear-cut, see id. S 1367(c)(4), but the parties have not addressed that issue, and we express no view upon it. The judgment of the district court is vacated and the matter remanded for further proceedings consistent with this decision. It is so ordered. -17- -17-