Hedy C. DIBBS, et. al., Plaintiffs

v.

Richard A. GONSALVES,
et. al., Defendants.

Civil No. 93–2705(SEC).

United States District Court,
D. Puerto Rico.

March 29, 1996.

Hedy Catherine Dibbs, Rio Piedras, PR, Pro Se.

Antonio M. Bird, Bird, Bird & Hestres, San Juan, PR, Guillermo A. Nigaglioni, Santurce, PR, John L. Shapiro–Torruella, Shapiro & Lugo, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Plaintiff has filed this action pursuant to the Organized Crime Control Act of 1970, known as the Racketeer Influenced and Corrupt Organizations Act ("hereinafter "RICO"), 18 U.S.C. 1961–1968. Plaintiff alleges violations of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1956 (laundering of monetary instruments), §§ 2314 and 2315 (interstate transportation of stolen property) and 31 U.S.C. § 5311 et seq. (acts which are indictable under the Currency and Foreign Transactions Reporting Act (Plaintiff's Amended Complaint, p. 9, ¶ 1) After 87 paragraphs of factual allegations of RICO's pattern of racketeering activities, plaintiff also alleges violations of sections 1962(a) to (d) under four separate causes of action (Amended Complaint, p. 21 to 38) and two additional causes of action based in part on Article 1802 of the Puerto Rico Civil Code.

Pending before the Court is defendants' Motion for Summary Judgment and to Dismiss (**Docket #22**). After careful review of the facts and applicable law in the present case, defendants' Motions for Summary Judgment and to Dismiss are **GRANTED**.

**Summary Judgment Standard**

As noted by the First Circuit, summary judgment has a special niche in civil litigation. Its role is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *McCarthy v. Northwest Airlines, Inc.* 56 F.3d 313, 315 (1st Cir., 1995).

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir. 1994). "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir. 1992). *See also, Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

FACTS

This is an action derived from a series of lawsuits filed in the local courts of Puerto Rico, which involved domestic disputes between plaintiff Hedy C. Dibbs and Richard A. Gonsalves. The Statement of Uncontested Facts filed by defendants reveals that the controversies between the parties range from a period of eight (8) years and seven separate civil actions filed in the Superior Court, San Juan Part. (Docket # 19, 23) [1] The litigation started with the first divorce complaint filed by plaintiff Dibbs in the Superior Court of Puerto Rico on March 19, 1987 and included two divorce actions, an alimony and child support action and an action for an accounting and co-administration of conjugal assets filed by plaintiff Dibbs; it also includes a divorce action on grounds of separation, an action for the liquidation of conjugal partnership assets and a libel and slander action filed by Richard Gonsalves. Id.

Plaintiff Dibbs filed an action for an accounting and co-administration of conjugal assets on April 23, 1990. (Civil Action No. (CAS 90–619)). In such action, plaintiff alleged the same claims she alleges in the present case of being defrauded of her property rights in conjugal partnership and corporate assets; transfer of assets; receipt of payments from the defendant corporations by Richard and Roger Gonsalves that they used for their exclusive benefit; that Richard and Roger Gonsalves maintained personal bank accounts in Nassau, Bahamas, Cayman Islands and other foreign countries, to which they made deposits, withdrawal and transfers between themselves without the consent or authorization of plaintiff and in prejudice of her share of the conjugal assets; that Richard and Roger Gonsalves made, for their exclusive benefit, secret and direct distribu-

---

1. 1. Divorce Action, *Hedy Catherine Dibbs v. Richard Allen Gonsalves*, Civil Action No. RF 87–1082; (Defendants' Motion for Summary Judgment, Exhibit 1 (hereinafter MSJ));

 2. Divorce Action *Hedy Catherine Dibbs v. Richard Allen Gonsalves*, Civil Action No. RF 88–2387(703) (MSJ, Exhibit 4);

 3. Alimony and Child Support Action, *Hedy Catherine Dibbs v. Richard A. Gonsalves*, Civil Action No. KAL 90–0135(705) (MSJ, Exhibit 11);

 4. Divorce Action on Grounds of Separation, *Richard Allen Gonsalves v. Hedy Catherine Dibbs*, Civil Action No. KDY 90–3342 (MSJ), Exhibits 13, 14, 20);

 5. Action for an Accounting and Co–Administration of Conjugal Assets; *Hedy Catherine Dibbs v. Richard Allen Gonsalves, International Marketing Corp., IMC Financial Services, Inc., IMC of the Pacific, Inc., APA Services, Inc., International Marketing Corp., Ltd., Roger Percy Gonsalves Stern and Neda Gonsalves,* on their own and as members of the conjugal partnership, John Doe Corp. and Allen Doe Corp.*, Civil Action No. (CAS) 90–619(1003) (MSJ, Exhibits 21, 22, 23);

 6. Action for the Liquidation of Conjugal Partnership Assets, *Richard Gonsalves v. Hedy Dibbs*, Civil Action No. (CAS) 91–1494(902) (MS, Exhibits 24, 26, 27, 28);

 7. Libel and Slander Action, *Richard Gonsalves v. Hedy Dibbs*, Civil Action No. KDP 93–1078(809) (MSJ, Exhibit 29);

tions of the gains or proceeds obtained from the corporations to the detriment of the capital of the corporations and with the sole intent of prejudicing the plaintiff in her share of the conjugal assets, diminishing and depreciating the value of the businesses. (MSJ Docket # 23, Exhibit 21, Docket # 19, Statement of Uncontested Facts ¶ 34).

■ Plaintiff filed this co-administration action against the same defendants in this action, except that Bryan Gonsalves, who has not been served with process in this action and IMC Credit Insurance Services, Inc., were not included. (Statement, 1(e).) With regards to defendant Brian Gonsalves the Court finds that plaintiff failed to properly serve defendant Brian Gonsalves with summons in this action. Accordingly, the Court **DISMISSES** plaintiff's claims against defendant Brian Gonsalves for lack of prosecution, pursuant to Local Rule 313(1)(A) and Fed. R.Civ.P. 4(m).

By order of November 26, 1991, the Superior Court provided that the controversies between the parties presented in the co-administration action would be litigated in the proceedings for the liquidation of the conjugal partnership. (Exhibit 22). Subsequently the Court entered a judgment of dismissal in the co-administration action (Exhibit 23, Judgment of January 27, 1992). This judgment of dismissal had the effect of an adjudication on the merits that concluded the litigation and controversies between plaintiff Dibbs and codefendants, except her husband, with respect to whom the claims made in the co-administration action continued in the liquidation of conjugal partnership proceedings, and Bryan Gonsalves, not included in the co-administration litigation.

In the liquidation of conjugal assets proceedings plaintiff Dibbs made the same claims of fraud of her ownership rights in the conjugal assets by bank deposits made by Richard Gonsalves for his exclusive benefit and money transfers and payments to Bryan Gonsalves and other third parties. (Exhibit 27). Plaintiff Dibbs repeatedly requested extensions of discovery deadlines in the liquidation of conjugal assets proceedings and the court generously granted several opportuni-

ties to support discovery to support her claims (Exhibit 27).

The discovery performed by Dibbs did not produce evidence of fraud; moreover, Dibbs disobeyed court orders; she failed to appear at hearings, which led to the entry of a default against plaintiff Dibbs by the Superior Court (Exhibit 27, Civil No. 91–1494(902), Order of February 24, 1995). In order to further elucidate the equities of this case, we quote the Superior Court's conclusions, in pertinent part:

The Court cannot ignore plaintiff's pattern of non-compliance to the Court's orders. Plaintiff has already demonstrated an obstinate attitude to the Court's orders. As part of the provisional remedies granted during this process the Court ordered the sale in public auction the Apartment PH–B, Condominio Baldorioty Gardens Apartments, Miramar, Puerto Rico. During the proceedings related to said sale in civil case no. KDI–903342(704), divorce action, defendant Dibbs refused to vacate the apartment, which culminated in an order of eviction against her on July 1st, 1993.

**Defendant Dibbs' conduct is indicative of her purpose to perpetuate this litigation so the liquidation of the conjugal partnership proceedings may never be concluded.** We cannot allow this abuse of the legal process and the Court's scarce resources. Furthermore, the Court must look out for the interests of all the parties; it is evident that in the above captioned case the party which has suffered the greatest harm is plaintiff. [Mr. Gonsalves] (Exhibit 27, p. 4) (Translation ours)

On the liquidation of conjugal assets proceedings, the judge considered all of plaintiff's claims from the previous lawsuits and did not determine the existence of fraud by defendants. He proceeded to divide the conjugal assets among plaintiff Richard Alan Gonsalves Stern and Hedy C. Dibbs. Such judgment was entered and notified to the parties on July 5, 1995. (Docket # 32, Exhibit A). This latter judgment constituted an adjudication on the merits as to defendant Richard Gonsalves.

Upon review of the record, this Court holds that the claims of plaintiff in this action

are barred by the doctrine of claim preclusion by the adjudication on the merits made by the Order of Dismissal entered in the Superior Court of Puerto Rico proceedings on the co-administration and accounting of assets (Exhibit 23, Civil No. KAC–90–0619(1033)), as well as the final judgment entered on the liquidation of assets proceedings. (Exhibit 27, Civil Case No. KAC 91–1494(902)).

## Applicable Law—Res Judicata and Collateral Estoppel

Courts have applied the doctrine of claim preclusion—also known as collateral estoppel—to civil RICO litigation in a variety of contexts.

�as Under the rule of res judicata—sometimes called "claim preclusion"—a valid and final personal judgment is conclusive of a claim. If the judgment is for the plaintiff, the claim is extinguished and merged in the judgment; if the judgment is for the defendant, plaintiff is barred from reasserting the claim. *Restatement of Judgments* 2d § 17. Claim preclusion applies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *see also Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

▪ Under the related doctrine of collateral estoppel—also termed "issue preclusion"—when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, even on a different claim. *Restatement of Judgments* 2d § 27; 18 Wright, Miller & Cooper, *Jurisdiction* §§ 4416–4419. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Supreme Court has expressly held that the doctrine of collateral estoppel applies in § 1983 actions. *Allen v. McCurry*, 449 U.S. at 104–105, 101

S.Ct. at ·420. Notwithstanding the federal court's interpretation of the res judicata and collateral estoppel doctrines, the Supreme Court has emphasized that federal courts cannot employ their own rules of res judicata in determining the effect of state judgments. Rather, federal courts must accept the rules chosen by the state from which the judgment is taken. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1897–1898, 72 L.Ed.2d 262 (1982).

With this in mind, we must examine the rules of res judicata as interpreted by the Supreme Court of the Commonwealth of Puerto Rico. The doctrine of res judicata is codified in Article 1204 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3343. This section reads, in pertinent part:

> In order that the presumption of the res judicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such.

The Supreme Court of Puerto Rico has frequently reiterated these requirements in their application of the res judicata doctrine. *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, 110 D.P.R. 753, 763 (1981); *Negrón v. C.I.T. Financial Services Corp.*, 111 D.P.R. 657, 661 (1981)

## ANALYSIS

▪ The Commonwealth Court's judgment of January 27, 1992 in civil case no. KAC 90–0619(1033) dismissed plaintiff's complaint in the action for an accounting and co-administration of conjugal assets because the parties were litigating the claims and incidents that were subject to the co-administration proceedings in a liquidation of conjugal assets case (Exhibit 27, Civil Case No. KAC 91–1494(902)). The judgment on civil case no. KAC 90–0619(1033) constituted an adjudication on the merits as to Richard and Roger Gonsalves and all corporate defendants, except IMC Credit Insurance Services, Inc. which plaintiff did not include as a defendant. Upon careful review of these documents, the Court finds that the elements of claim preclusion are present in the abovecaptioned case.

In the co-administration proceedings, the Court had the opportunity to evaluate the totality of the circumstances and allegations and concluded that it was proper to dismiss the action under the provisions of Rule 39.2(b) of the Puerto Rico Rules of Civil Procedure. 32 L.P.R.A.App.III. The entry of a judgment of dismissal constitutes an adjudication on the merits. In the liquidation of conjugal assets proceedings the corporate defendants and Roger Gonsalves were not included as parties. Plaintiff Dibbs' decision not to appeal the judgment dismissing the complaint as to those defendants and her failure to join them in the liquidation of assets action, preclude her from relitigating matters which should have been advanced in a previous suit.

As noted above, on the liquidation of conjugal assets proceedings, the judge considered all of plaintiff's claims from the previous lawsuits and did not determine the existence of fraud by defendants. He divided the conjugal assets among plaintiff Richard Alan Gonsalves Stern and Hedy C. Dibbs. Such judgment was entered and notified to the parties on July 5, 1995. (Docket # 32, Exhibit A). This latter judgment constituted an adjudication on the merits as to defendant Richard Gonsalves.

In the case at bar there is no controversy that there exists identity between the subject matter, the causes of actions and the parties and the capacity in which they acted. The allegations made by plaintiff Dibbs in the RICO action and the allegations made in the co-administration proceedings are the same. Furthermore, the judgment entered on January 27, 1992, as well as the judgment entered on the liquidation of conjugal assets proceedings, are presumed to be valid and correct and that the Court which entered the judgment had subject matter and personal jurisdiction over the named defendants. Absent prejudice or manifest error, the Court should not intervene with judgments so entered. *Sanchez Rodriguez v. Lopez,* 116 D.P.R. 172 (1985) and *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987).

Several federal appellate courts have applied the doctrine of claim preclusion to cases in which plaintiffs failed to bring their RICO claims in an earlier state court proceedings. In *Kaufman v. BDO Seidman,* 984 F.2d 182 (6th Cir.1993), the Circuit Court applied the preclusion doctrine where plaintiffs had previously and unsuccessfully prosecuted a malpractice claim against their financial adviser. The Court held that plaintiffs' RICO claims were precluded because the factual issues of causation in the two actions were sufficiently similar to bar subsequent prosecution of a RICO claim in federal court against the same defendants. Similarly, in *Evans v. Dale,* 896 F.2d 975 (5th Cir.1990), the Court held that the doctrine of claim preclusion barred plaintiffs' RICO claim, because the claims of the parties, a former husband and wife, had been the subject of a previous state court divorce proceeding. The Court also found that the plaintiff wife could have brought her RICO claim in the divorce proceeding and her failure to do so was fatal to her subsequent effort to bring such a claim in federal court. Accordingly, this Court concludes that plaintiff Hedy Dibbs is estopped under the doctrine of res judicata from bringing another action on the same grounds. Therefore, plaintiff's claims against defendants are hereby **DISMISSED.**

**Motion to Dismiss Standard in RICO claims**

The Court also finds that plaintiff Dibbs' RICO claim against defendant IMC Credit Insurance Services, Inc. must be **DISMISSED.**

In *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1st Cir.1991), the First Circuit described the standard against which pleadings in a civil RICO complaint must be measured upon a Court's determination of a Rule 12(b)(6) motion to dismiss:

> For one thing, the complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlotions, unsubstantiated conclusions, or outright vituperation. For another thing, in cases alleging civil RICO violations, par-

ticular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants. Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorney's fees. See 18 U.S.C. Sec. 1964(c). For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

Upon review of plaintiff's claims, this Court **DISMISSES** plaintiff's RICO action, in view of her bald assertions and unsubstantiated conclusions. In order to substantiate her 18 U.S.C. § 1962 RICO claim, plaintiff alleges violations of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1956 (laundering of monetary instruments), §§ 2314 and 2315 (interstate transportation of stolen property) and 31 U.S.C. § 5311 et seq. (acts which are indictable under the Currency and Foreign Transactions Reporting Act (Plaintiff's Amended Complaint, p. 9, ¶ 1)) Plaintiff also alleges violations of sections 1962(a) to (d) under four separate causes of action (Amended Complaint, p. 21 to 38) and two additional causes of action based in part on Article 1802 of the Puerto Rico Civil Code.

In order to recover under RICO, a plaintiff must prove that the defendant engaged in "prohibited activities" consisting of predicate acts which constitute a "pattern of racketeering activities" 18 U.S.C. §§ 1961–1968. Racketeering activity includes mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and interstate transportation of stolen property, (18 U.S.C. 2314–2315) as possible predicate acts. 18 U.S.C. § 1961(1) and "pattern"

requires a threshold of "at least two acts of racketeering activities" within a ten-year period 18 U.S.C. 1961(5). The Court addressed the "pattern of racketeering" requirement in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In that case, the Court held that the RICO plaintiff must show "continuity and relationship" to prove a pattern. The plaintiff, noted the Court, "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900.

With respect to the relatedness requirements, the Supreme Court stated: "[a] plaintiff establishes that predicate acts are related by demonstrating that they "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240–241, 109 S.Ct. at 2901.

With respect to the continuity requirement, the Supreme Court held that "[t]o establish continuity, a plaintiff must demonstrate that the related predicate acts 'amount to or pose a threat' of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. *See also Fleet Credit Corp. v. Sion*, 893 F.2d 441, 446 (1st Cir.1990) It added: "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate **acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement**: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902; *see also Fleet Credit Corp.*, 893 F.2d at 446. (emphasis added)

█ Plaintiffs have attempted to allege a pattern in this action by making a disjointed grouping of different category transactions, i.e. bank deposits, payments to third parties, executive compensation distributions, assignment of subscription rights and the failure to declare dividends. Upon the Court's review of plaintiff's allegations, we conclude that the alleged criminal acts of the defendant do not

have the same or similar purposes, results, participants, victims or methods of commission; we also conclude that they are not otherwise interrelated by distinguishing characteristics; rather, defendant's acts, if proven true, would constitute isolated events which do not amount to or pose a threat of continued criminal activity. Since plaintiff failed to meet the jurisdictional RICO requirements of relatedness and continuity, her claims against the defendant are **DISMISSED** for lack of subject matter jurisdiction.

■ This Court feels that plaintiff's state claims, if actionable, could properly be adjudicated in the local courts of Puerto Rico. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995). See also *Martinez v. Colon* 54 F.3d 980, 990 (1st Cir.1995) (affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed.") Accordingly, plaintiff's state-law claims against defendants are also **DISMISSED.**

Ordinarily, our inquiry should finish here. However, the peculiar nature of this suit, which involves a protracted history of litigation in the state courts and complex issues of state law, would have prompted this Court to abstain from exercising jurisdiction, pursuant to the *Colorado River* and *Burford* abstention doctrines, if we had not resolved plaintiff's claims on the merits. Due to the convoluted and distinctive factual and legal issues which surrounded this controversy, the Court feels that a discussion of the *Burford* and *Colorado River* abstention doctrines will help elucidate the equities of the case and the imposition of sanctions upon plaintiffs in the abovecaptioned case.

**Burford Abstention.**

A case decided by the Fifth Circuit can provide an apt analogy to the facts and applicable law in the present case. In *DuBroff v. DuBroff,* 833 F.2d 557 (5th Cir.1987), an ex-wife sued her former husband, several business associates and her former husband's lawyers alleging that they had defrauded her of community property in the course of a divorce settlement. The complaint alleged RICO violations by predicate acts of mail, wire and state law fraud. After delays in the federal proceedings she filed proceedings in state court to invalidate the divorce settlement, as incorporated in the divorce decree entered by the same state court, on the basis of alleged "extrinsic" fraud in the settlement. She then settled with all the defendants except her husband's lawyers. As part of this second settlement, state and federal proceedings against the settling defendants were voluntarily dismissed with prejudice. As a result, only her husband's lawyers and their firm remained as defendants in the federal case. Eventually, the district court dismissed the case as res judicata because "the actions complained of are all approved by a Texas state court in a divorce decree ..." The ex-wife appealed.

Although it considered the applicability of res judicata and collateral estoppel in the action, the Fifth Circuit abstained from exercising jurisdiction under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Court noted that *Burford* stands for "... the principle that some cases properly brought in federal courts should nevertheless be dismissed to the state courts for resolution because of a concern for comity between sovereigns. Underlying the decision is a recognition that the potential effects of certain cases on state administrative schemes are so important that resolution of them by the federal courts is unwise." *DUBROFF,* 833 F.2d at 561

The Fifth Circuit discussed the need to abstain from intruding with the domestic relations controversies between the parties in stating:

First, there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law. "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in domestic matters." *Thompson v. Thompson,* 798 F.2d 1547, 1558 (9th Cir.

1986). Appellant says the 'scheme' here at issue is less complex than those at issue in other [Burford] cases; but even were this true, the fact that 'family law' is at issue here makes 'abstention' particularly appropriate. *Friends of Children, Inc. v. Matava*, 766 F.2d 35, 37 (1st Cir.1985). Second, this case presents novel and dubious questions of state family law. For example, we have no idea whether Texas law would allow an independent action for fraud and conspiracy in the property settlement against the divorce lawyers of an ex-spouse, particularly when the ex-spouses have settled their own disputes. All of Constance DuBroff's rights against others involved in reaching the divorce settlement may be derivative from her rights against her husband. This question could have important and far reaching implications for divorce law and for the Bar in Texas; an incorrect decision by our Court could well be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814 [96 S.Ct. 1236, 1245, 47 L.Ed.2d 483] (1976) (discussing Burford Abstention)

■ The facts of this case counsel abstention even more strongly than the facts in *DuBroff*, since this case is even more immersed in domestic relations controversies. The potential for disruption of the efforts by the Puerto Rican courts to establish a coherent policy for resolving domestic relations controversies between Puerto Rico residents—in its own courts, under guidelines established by its own Civil Code—is not an abstract controversy. It is an immediate controversy which directly affects the parties before this court, because, as noted above, for more than eight (8) years the same controversies have been the subject of domestic relations proceedings that are currently pending before the Puerto Rico Superior Court.

Continuation of this RICO action would disrupt the authority and rulings of the Puerto Rico Superior Court in the liquidation of conjugal assets proceedings which managed the discovery and dealt with plaintiff Dibbs'

litigation abuse in that action. If this Court continued these proceedings against defendant Richard Gonsalves, it would undermine the authority of the Puerto Rico Superior Court in its dealing with plaintiff Dibbs' litigation abuse, allowing her to circumvent her disobedience of court orders in that case. Furthermore, this Court would be required to rule on the precise ownership rights of plaintiff Dibbs which she claims in this action over the corporate defendants and which are the basis of her claim (¶¶ 7–12, pp. 4–6 of the complaint).

Similarly, continuing the action as to other defendants would immerse this court in a domestic relations controversy similar to that faced by the Fifth Circuit in *DuBroff* and which caused that Court to abstain: whether Puerto Rico would allow an independent cause of action for fraud and conspiracy on the administration of community property against the business associates of an ex-spouse, and whether Article 1313 of the Civil Code, 31 L.P.R.A. § 3172, limits the remedy to an action for damages against the spouse engaged in the administration of community property that has to be exercised exclusively at the time of dissolution of the conjugal partnership. On the same grounds considered by the Fifth Circuit in *DuBroff*, supra, this Court would have abstained from exercising jurisdiction and dismissed the complaint in this action.

To continue this action would also be contrary to the tradition followed by federal courts in abstaining from exercising jurisdiction over domestic relation controversies. In *Gonzalez Canevero v. Rexach*, 793 F.2d 417 (1st Cir.1986), the ex-wife filed a diversity action against her ex-husband, alleging that she was a fifty (50%) percent shareholder in a corporation controlled by her former husband; that the corporation owned a piece of real estate, which she had requested an accounting regarding the affairs of the corporation with a view toward partitioning and distributing her property, but that her ex-husband had refused her request. She sought money damages equal to her half-interest in the property or an order to partition the property.

The Court in that case noted that the plaintiff and defendant had been divorced in Florida, but that no property had been distributed by the Florida divorce. The district court of Puerto Rico dismissed the complaint on the grounds that the suit was a domestic relations dispute, not properly encompassed within its diversity jurisdiction. The Court of Appeals affirmed the decision on the basis of the "domestic relations" exception to diversity jurisdiction. The First Circuit Court concluded:

> We have held, in discussing the exception, that "federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception." *Sutter v. Pitts,* 639 F.2d 842, 843 (1st Cir.1981) We have also noted that "it has been held that a federal court—even where it has jurisdiction—may abstain for reasons of comity and common sense from cases better handled by the state courts having authority over matrimonial and family matters." *Armstrong v. Armstrong,* 508 F.2d 348, 350 (1st Cir.1974). Accord *Fern v. Turman,* 736 F.2d 1367 (9th Cir.1984) *cert. denied* [469 U.S. 1210] 105 S.Ct. 1177 [84 L.Ed.2d 326] (1985); *Bossom v. Bossom,* 551 F.2d 474 (2d Cir.1976).

Federal Courts have held that even though they will entertain jurisdiction when the plaintiff is able to characterize the action as one for damages caused by the spouse's tortious conduct, they will decline jurisdiction if the tortious conduct is part of an ongoing series of disputes centering around the marital relationship. *Jagiella v. Jagiella,* 647 F.2d 561 (5th Cir.1981); *Kilduff v. Kilduff,* 473 F.Supp. 873 (S.D.N.Y.1979); *Mauro v. Mauro,* 762 F.Supp. 173 (E.D.Mich.1991). In view of the above discussion, this Court would have abstained under the *Burford* abstention doctrine, if we had not resolved the controversy on the merits.

As noted previously, this Court also thinks that the unusual litigious history between the abovecaptioned parties prompt the Court to note that this would have also been an appropriate case for abstention under the *Colorado River* doctrine, if this Court had not resolved this dispute on the merits.

## Colorado River Abstention

The Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), established a narrow basis for district courts to stay or dismiss federal lawsuits in deference to parallel state proceedings. The Court held that in "exceptional circumstances," a federal court could decline jurisdiction based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246; *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983).

 The Court in *Colorado River* enumerated four factors to determine whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over some res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246. In *Moses H. Cone,* the Court suggested two other factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. *Moses H. Cone,* 460 U.S. at 23, 26, 103 S.Ct. at 941, 942. Another factor mentioned but not applied in *Moses* and which some Courts have considered, is the vexatious or reactive nature of the federal lawsuit, *Moses H. Cone,* 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20; *see e.g. Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 308–310 (1st Cir.1986).

In *Colorado River,* the Supreme Court stressed that Courts should stay or dismiss cases under this doctrine with great caution. The Court noted the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, 424 U.S. at 817, 96 S.Ct. at 1246, and warned that "only the clearest of justifications will warrant dismissal" *id.* at 819, 96 S.Ct. at 1247. The court may weigh any single factor differently, depending on the case, and "no one factor is necessarily determinative: a carefully consid-

ered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *id.* at 818–819, 96 S.Ct. at 1247.

The district court must weigh the important factors "with the balance heavily weighed in favor of the exercise of jurisdiction" *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. The decision whether to surrender jurisdiction is "necessarily left to the discretion of the district court in the first instance" *id.* at 19, 103 S.Ct. at 938, and the district court's decision may be reversed only for an abuse of that discretion. Such discretion must be exercised, however, within the constraints of the 'exceptional circumstances test'." *id.; see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529 (1st Cir.1991) *cert. denied,* 503 U.S. 986, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992).

■ The first factor is not applicable to the present case. The second factor, the convenience of the federal forum, militates against retaining jurisdiction. As noted above, several federal appellate courts have applied the doctrine of claim preclusion to cases in which plaintiffs failed to bring their RICO claims in earlier state court proceedings. *See Kaufman v. BDO Seidman; Evans v. Dale, supra.* The third factor, the desirability of avoiding piecemeal litigation, counsels strongly against the exercise of federal jurisdiction. Plaintiff filed the present RICO action in 1993. Plaintiff has been engaged for several years in litigation of the same issues before the Puerto Rico Superior Court, following a pattern of litigation abuse and harassment and after the Superior Court started issuing unfavorable rulings about plaintiff. (See footnote 1, exhibits 21–28).

The fourth factor, the order in which jurisdiction was obtained by the courts, also weighs against the exercise of jurisdiction. Allowing the plaintiff to federalize her claims over her participation in the community property now pending before the San Juan Superior Court would cause significant harm to defendants. Plaintiff has submitted defen-

dant to eight years of litigation abuse; this Court declines to condone and collaborate with plaintiff's strategy of vexatious litigation.

Seen in the light of the First Circuit's directive to be mindful of the "necessity of preventing abusive or vexatious treatment of defendants in RICO actions, *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1st Cir.1991), the repetitive litigation of the same charges of fraudulent conduct presented in this RICO action in four separate Commonwealth court proceedings, saturated with plaintiff Dibbs' abusive behavior, show that litigating the same issues and presenting the same evidence here would be patently unfair and cause significant harm to defendants by exposing them to an extension and continuation of the above pattern of abuse and harassment; by disrupting and leaving ineffective the measures taken by the Commonwealth Courts to deal with plaintiff Dibbs' litigation abuse and by this Court's encroachment on the decision-making power of the Commonwealth Court in the liquidation of conjugal assets proceedings, with the possibility of inconsistent and conflicting rulings between the two courts.

The last two factors also counsel strongly against the exercise of federal jurisdiction. This is an essentially domestic relations dispute which not only is controlled by state law but also involves Puerto Rico policies over which federal courts traditionally have not interfered. Precisely because the Commonwealth courts can better adjudicate domestic relations disputes, this Court has traditionally abstained from interfering with them.

Notwithstanding the appropriateness of the Colorado River abstention doctrine to the present case, our disposition of this controversy on the merits does not require us to apply this doctrine.

■ We acknowledge that defendants may have won a Pyrrhic victory.[2] Three years have passed since the filing of this lawsuit, with the concomitant expenses of litigation. But perhaps we may assuage de-

**2.** A victory or goal achieved at too great a cost; this phrase originates from a remark attributed by Plutarch to Pyrrhus, who declared, after a costly victory over the Romans, that another similar victory would ruin him.

fendants' losses by granting them attorney's fees.

Defendants Richard A. Gonsalves and Roger P. Gonsalves, **(Docket # 27)** Interamerican Marketing Corporation, **(Docket # 29),** APA Services Inc., IMC Financial Services Inc., IMC Credit Insurance Services, Inc., International Marketing Corporation, Ltd. and IMC of the Pacific Inc. **(Docket # 33)** have filed Motions for Sanctions pursuant to Federal Rule of Civil Procedure 11.

The Advisory Committee Notes to Rule 11, Fed.R.Civ.P. state in pertinent part:

> The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was **part of a pattern of activity, or an isolated event;** whether it infected the entire pleading, or only one particular count or defense; **whether the person has engaged in similar conduct in other litigation; whether it was intended to injure;** what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants; all of these may in a particular case be proper considerations. Advisory Committee Notes on 1993 Amendment, subdivisions (b) and (c) (emphasis added)

As noted by defendants, what should have been a straightforward divorce and liquidation of conjugal assets proceedings have become eight years of litigation abuse by plaintiff Dibbs, involving seven (7) civil actions, which culminated with the Commonwealth Court striking her pleadings in the litigation of conjugal assets proceedings as sanction for her failure to obey Court orders and appear at hearings.

During those eight years, plaintiff Dibbs gained unauthorized entry into the offices of Richard and Roger Gonsalves on the night of August 18, 1992 with her two children, using the children to make copies of important business and personal documents, which she gave to her attorneys for use in the pending proceedings (Defendant's Statement of Uncontested Facts 12–17; Exhibit 6, Richard A. Gonsalves' Sworn Statement; Exhibit 19). Plaintiff Dibbs' conduct forced Richard and Roger Gonsalves to request and obtain a Commonwealth court order directing plaintiff Dibbs not to enter the premises of the offices of Richard Gonsalves without previous court authorization; (Exhibit 20, Restraining Order against Hedy C. Dibbs, civil case no. KDI 90–3342);

Ms. Dibbs also used those documents and the results of repetitive discovery in the divorce, alimony and child support, accounting and co-administration, and liquidation of conjugal assets proceedings. Plaintiff has repeatedly brought before the Commonwealth courts in those four actions the same charges and complaints that she has presented here of being defrauded of her ownership rights to community property through deposits in foreign bank accounts, payments to third parties, compensation distributions and asset transfers without prevailing once on each of the four occasions. (Footnote 1, *supra*);

When faced with unfavorable rulings in the Commonwealth proceedings, plaintiff Hedy Dibbs intensified her litigation abuse, both inside and outside the courtroom; for two years she disobeyed court orders to evict from an apartment that was community property and that the court had ordered sold; she refused to turn over the keys, refused to receive a copy of the Writ of Eviction from the Marshal, and changed the padlocks that the Marshal placed on the doors to the apartment upon executing the eviction writ, in order to regain access to the same. (Exhibit 15f, Minutes from Civil case No. KDI 90–3342; Exhibit 27, civil case no. 91–1494(902), p. 4). At a hearing on these matters she defied the authority of the court and the judge ordered her arrest, vacating the order shortly thereafter.

Plaintiff Dibbs also accused Richard Gonsalves of a drug addiction problem and filed a motion with the court in the alimony and

**56**

child support proceedings requesting that child visitation be withheld until an investigation was made by a social worker; (Exhibit 18, KDI–90–3342(704)); there is no evidence in the record to support plaintiff's allegations of drug abuse against defendant Richard Gonsalves. (Exhibit 29, Robert A. Cartades' Sworn Statement) Richard Gonsalves later filed an action against plaintiff Hedy Dibbs (Exhibit 29, KDP 93–1078(JA)).

Upon the Court's review of plaintiff's protracted litigation history, we conclude that this Court would be hard-pressed to find a case where sanctions would be more appropriate than in the present one. Plaintiff has deliberately and wilfully conducted an abusive pattern of litigation; her conduct, which included a complete disregard of the state court's orders in several cases in the state courts, infected the entire pleadings not only in this case but on the cases filed in the Commonwealth courts. Her litigation strategy has been a battle of attrition, slowly but inexorably draining the limited resources of the parties and the federal and state courts alike. The Court also concludes that plaintiff's contentions were not warranted by existing law, pursuant to Federal Rule of Civil Procedure 11(2).

Accordingly, defendants' Motions for Sanctions under F.R.C.P. 11 are **GRANTED. (Dockets #27, 29, 33)** To the extent that Rule 11 sanctions serve the main purposes of deterrence and compensation, *Navarro–Ayala v. Nuñez,* 968 F.2d 1421 (1st Cir.1992) this Court will make an award of the sum that it deems reasonable to deter the plaintiff Hedy Dibbs and her counsel from continuing their litigation abuse and to compensate the defendants for the expenses that they have incurred in defending from such abuse. *See Rodriguez O'Ferral v. Trebol Motors Corp.,* 45 F.3d 561 (1st Cir.1995). Accordingly, we order defendants to submit proof of their attorney fees within 15 days of this order (**until April 12, 1996**), to enable the Court to award the amount it deems appropriate. Judgment shall follow accordingly.

**SO ORDERED.**