UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-2082

ANNETTE B. DeMAURO,

Plaintiff, Appellant,

v.

JOSEPH M. DeMAURO, EDWARD MARTIN, DeMAURO CO., INC.,
NICHOLAS DeMAURO, TRI-AREA DEVELOPMENT CO., INC. and JOAN MARTIN,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]



Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.



S. James Boumil for appellant.
Kathleen M. Morrissey with whom Bernard A. Dwork, Roger T.
Manwaring, Barron & Stadfeld, P.C., Richard L. Fox and Carragher & Fox
were on brief for appellees Edward Martin, DeMauro Co., Inc., Nicholas
DeMauro, Tri-Area Development Co., Inc. and Joan Martin.



June 11, 1997


BOUDIN, Circuit Judge. In this case, one of the

participants in a pending divorce action has invoked the

federal racketeering statute to challenge asset transfers by

her spouse. The district court responded by dismissing the

complaint without prejudice on abstention grounds. Because

dismissal was on the pleadings, we assume the truth of

statements in the complaint, cautioning that they have yet to

be proved.

Annette and Joseph DeMauro were married in 1979. Joseph

worked  in  the construction business and, according to Annette,

earned "millions of dollars," promising to share monies with

Annette. But the marriage proved less successful than his

business. The couple separated, and in 1994, Annette--a New

Hampshire resident--sued for divorce in New Hampshire state

court.

The divorce action has been a bitter and prolonged

contest. At various times, Joseph has refused to pay spousal

support  orders (which total more than $250,000), has failed to

appear for court proceedings, has resisted discovery requests

concerning his income and property interests by invoking the

Fifth  Amendment,  and  has  been held in contempt of court. After

more than two years, the divorce action remains unresolved.

In  May  1996,  Annette  filed the instant suit in the federal

district court in Massachusetts. The complaint named Joseph

and  five  other defendants: Joseph's 42-year-old son, Nicholas

-2- -2-

DeMauro; Joseph's sister and brother-in-law, Joan and Edwar

ons allegedly controlled by Joseph and

icholas--DeM auro Co., Inc. and Tri-Area Development Co., Inc.

Joseph d Martin;  and  two  corporati N was alleged to have a residence in Massachusetts and

both corporations had offices in the state.

The  complaint  set  forth  a RICO claim for civil conspiracy,

18 U.S.C. S 1961 et seq., specifying predicate racketeering

acts of (1) mail fraud, 18 U.S.C. S 1341, (2) wire fraud, 18

U.S.C. S 1343, and (3) "extortionate threats," 18 U.S.C.

S 1951. The complaint also alleged pendent state-law claims1

for intentional infliction of emotional distress, breach of

fiduciary  duty,  conspiracy, fraudulent conveyances, and illegal

telephone recordings.

In  support  of the RICO claim, the complaint charged inter

alia that Joseph and the other defendants fraudulently

concealed  from  Annette  separate and marital property to prevent

her  from  sharing in these assets. Annette alleged that Joseph

and the other defendants

by means of false pretenses, representations, and
devices established bank and investment accounts in
Switzerland, [the] Middle East, France,
Liechtenstein, several states of the United States
and  various  and sundry other locations most of which
accounts  were established under the names of straws,
sham trusts, shell companies and phony

    1 Diversity  jurisdict ion was not available because although
Joseph  is  apparently not a New Hampshire resident, Annette and
the Martins are New Hampshire residents, thus defeating the
complete  diversity  requirement. Casas Office Machines, Inc. v.
Mita  Copystar America, Inc., 42 F.3d 668, 673 (1st Cir. 1994).

-3- -3-

"foundations, " all designed to conceal the location,
extent, and existence of assets from [Annette] and
persons with whom [Joseph] did business.

The alleged activity was undertaken not by Annette's

husband  alone,  but  also  by others who comprised an alleged RICO

"enterprise," and it involves alleged concealments "well in

excess  of  a  million dollars." And, allegedly, Joseph not only

threatened to deprive Annette of assets but also boasted that

he had bribed foreign officials to secure himself a false

identity and foreign passport.

In June 1996, all the defendants except Joseph moved to

dismiss  the  suit  on  various grounds, including lack of standing

to  bring  RICO claims and failure to plead fraud with requisite

particularity,  Fed.  R.  Civ. P. 9(b). Joseph did not join these

motions because he had not yet been served process, despite

efforts  by  Annette  to  locate and serve him. Joseph was finally

served with process while appearing involuntarily in New

Hampshire state court, having been arrested and brought there

for a hearing on his failure to pay ordered spousal support.

On July 26, 1996, the district judge issued a seven-page

order.   He  expressed  doubt whether Annette had shown a property

interest protectible under the civil RICO statute; but he

ultimately did not decide this issue and instead dismissed

without  prejudice Annette's claims against all the defendants.

The dismissal was based upon the doctrine of abstention

established in Burford v. Sun Oil Co., 319 U.S. 315 (1943).

-4- -4-

Rather than staying the federal proceedings, the court

dismissed, noting that Annette could

replead if and when she can show a "property" right
which . . . has been denied her by the defendants'
allegedly illegal transfers--that is, after the
resolution of the divorce action and the attendant
allocation of marital assets.

The parties had not addressed the possibility of

abstention  in  their  filings. In August 1996, Annette moved for

reconsideration, arguing that abstention was not proper and

that, if it were proper, the court should stay proceedings

rather  than  dismissing  the action. The court denied her motion

without comment. Annette now appeals.

1. For reasons that will become evident, we begin with

the threshold issue bypassed by the district court, namely,

whether the plaintiff has made out a claim of "injury" to her

"business  or  property,"  as is required for a civil RICO damages

action. 18 U.S.C. S 1964(c). This is sometimes described as

a "standing" issue. There is plainly a case or controversy

under  Article III; but the statutory precondition of injury to

business or property must also be met. Sedima, S.P.R.L. v.

Imrex Co., 473 U.S. 479, 496 (1985).

One might think it obvious that a precondition in a

federal  statute  would  be  defined uniformly by federal law. Cf.

Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S.

143, 147-49 (1987) (civil RICO statute of limitations). This

is especially so where the same phrase--injury to business or

-5- -5-

property--is also a long-standing requirement under section 4

of the Clayton Act, 15 U.S.C. S 15(a). Yet, the RICO

precedents are filled with references to state property law,

which is often said to govern by implicit cross-reference.

E.g., Doe v. Roe, 958 F.2d 763, 768 (7th Cir. 1992) (citing

cases).

Some role does exist for state law. There is no general

federal law of property transfers, so the question who owns a

piece  of  property  is  likely to be settled by state law. On the

other hand, one might expect federal law to decide whether a

given  interest, recognized by state law, rises to the level of

"business  or  property,"  or whether "injury" has been done to it

by  the  acts  alleged.2 Where to set the "business or property"

threshold depends on federal statutory purpose, and that

purpose is likely to support a definition that is uniform

throughout the country.

In all events, the assets that Annette ultimately claims

to have been concealed are "property" by any definition: the

complaint  alleges fraudulent concealment and transfers of real

property  and  bank account funds by Joseph. One difficulty--so

far as we can tell from the undeveloped record--is that most

(perhaps all) of this property may have been held from the

    2 E.g. ,  A ssociated Gen. Contractors of California, Inc. v.
California State Council of Carpenters, 459 U.S. 519, 529-45
(1983) (examining the meaning of "injury" under section 4 of
the Clayton Act); compare Roma Constr. Co. v. aRusso, 96 F.3d
566, 579-80 n.10 (1st Cir. 1996) (Lynch, J., concurring).

-6- -6-

outset in Joseph's name or in the name of others such as

foundations  that he controls. The complaint also implies that

most  (perhaps all) of the underlying assets were the result of

the success of Joseph's construction business.

New  Hampshire  is  not  a  community property state, see Baker

v.  Baker ,  421 A.2d 998, 1000 (N.H. 1980), and much of the real

property and monies described in the complaint may not yet be

Annette's property. To this extent, what Annette has is an

expectancy: in the divorce proceedings, some or much of this

property may be awarded to Annette. State law provides for

"equitable division" in divorce actions of "all tangible and

intangible property and assets . . . belonging to either or

both  parties,  whether  title to the property is held in the name

of either or both parties." N.H. Rev. Stat. Ann. S 458:16-a.

An equal division is presumptively equitable. Id. S 458:16-

a(II).

If the real and other tangible property, or most of it,

belongs  to  Joseph,  can  it still be said that Annette's divorce-

suit claim to a share is also "property" protectible by RICO?

Possibly so. Some precedent, at least under the Clayton Act,

extends  protection  to  intangibles under certain circumstances.3

3E.g., E.A. McQuade Tours, Inc. v. Consolidated Air Tour
Manual  Comm., 467 F.2d 178, 184 (5th Cir. 1972), cert. denied,
409 U.S. 1109 (1973) (contracts are "property" under the
Clayton Act); cf. Logan v. Zimmerman Brush Co., 455 U.S. 422,
430-33  (1982) (right to use adjudicatory procedures created by
state  Fair  Employment Practices Act is "property" protected by
the Due Process Clause).

-7- -7-

But even if we assume arguendo that Annette's claim is itself

protected property, the question remains whether Joseph's

alleged efforts to conceal what is still his property (real

property and cash) has "injured" Annette's property (her

inchoate claim).

Certainly, Annette may be worse off because of the

concealment;  but her legal claim remains intact, together with

various  remedies directed at concealment of assets. (In fact,

she has already obtained attachments in state court totalling

$33  million  on property owned partly or solely by Joseph.) No

one  knows  what  Annette  will be awarded in the divorce action or

whether Joseph's alleged efforts to conceal will hamper her

ability to collect. In sum, any claim of present "injury" to

her  claim  is  speculative, so long as we are concerned with the

movement of real property or cash that for now belongs to

Joseph.

Pertinent here is a decision of this court upholding

dismissal of a civil RICO claim brought by a plaintiff who

alleged injury based on a "hypothetical inability to recover"

if it won its pending contract lawsuit against the defendant.

The  defendant  had  allegedly made fraudulent transfers of assets

to his wife; but we held that the RICO claim was not ripe for

adjudication because the claimed injury was too speculative.

-8- -8-

Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir.

1990). This and like decisions4 seem directly on point.

To be sure, there is a certain arbitrariness in drawing

the line here. But while RICO is to be construed broadly,

Sedima, 473 U.S. at 498, "injury to property" is not an

infinitely  elastic  concept. And in cases like this, it is hard

to  see  how  a  court would calculate damages now, given the dual

uncertainties of what Annette will be awarded and how it will

be  affected  by concealment. See First Nationwide Bank v. Gelt

Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994), cert. denied,

115  S.  Ct.  728 (1995) ("[A]s a general rule, a cause of action

does  not  accrue under RICO until the amount of damages becomes

clear and definite.").

This conclusion--that Annette has not adequately alleged

injury to her property--applies only to the extent that the

concealed property currently belongs solely to Joseph or

others. However, the complaint also asserts that Joseph has

sought to conceal "marital" or "separate" property. To the

extent that Annette is claiming a present ownership interest,

she appears to be asserting injury to her property within the

terms  of  the  RICO  statute. Cf. Grimmett v. Brown, 75 F.3d 506,

4See Barnett v. Stern, 909 F.2d 973, 977 n.4 (7th Cir.
1990); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d
Cir. 1988), cert. denied, 490 U.S. 1007 (1989); Capasso v.
Cigna Ins. Co., 765 F. Supp. 839, 842 (S.D.N.Y. 1991).

-9- -9-

516-17  (9th  Cir.),  cert.  granted, 116 S. Ct. 2521 (1996), cert.

dismissed, 117 S. Ct. 759 (1997).

Admittedly, Annette's allegations of ownership are

confusing  and  in  certain  respects lack supporting detail. They

certainly could be explored through inquiry and discovery and

could be tested, if doubtful, by a motion to dismiss or by

summary judgment. Still, on the present pleadings the

possibility remains that Annette already owns some of the

property allegedly concealed by Joseph and others. On that

premise, we turn to the issue of abstention.

2.   We  note  at  the  start  that the district court's remedy-

-dismissal  on  abstention  grounds--is not permissible. Just two

months  before  the  district court issued its ruling, the Supreme

Court  held  that abstention, under Burford or otherwise, may be

appropriate  in  suits  for  damages. Quackenbush v. Allstate Ins.

Co. ,  116  S.  Ct. 1712, 1728 (1996). But the Court further held

that in a damages action, the district court may only order a

stay  pending  resolution of state proceedings; it cannot invoke

abstention to dismiss the suit altogether. Id.

The rationale of Quackenbush is that damages actions,

unlike suits for equitable relief, do not invoke the court's

equitable  discretion. Id. at 1727. This rule may seem rather

wooden,  given  the  merger  of law and equity, but the Court means

what  it  says:   Quackenbus h held that the dismissal of a damages

action on Burford grounds was reversible error, without

-10- -10-

deciding whether "a more limited abstention-based stay order

would have been warranted on the facts of this case." Id. at

1728. There is no question that the present RICO claim is

primarily a damages action. See complaint, qq 62-67. It is

uncertain  whether  equitable relief is even available to private

plaintiffs under civil RICO. Lincoln House, 903 F.2d at 848.

The question remains whether the district court has

authority  at  least  to  stay Annette's federal suit on abstention

grounds, pending resolution of the New Hampshire divorce

proceeding. In that proceeding, the state court might

determine what property is currently owned by Annette. See

N.H.  Rev.  Stat. Ann. S 458:16-a(II). For this reason, another

district court--cited by the district court in this case--has

abstained  from adjudicating a federal RICO action brought by a

spouse involved in pending divorce proceedings. Farkas v.

D'Oca, 857 F. Supp. 300, 303-04 (S.D.N.Y. 1994). See also

Dibbs v. Gonsalves, 921 F. Supp. 44, 52 (D.P.R. 1996).

This  is  not  a  wholly  persuasive reason given New Hampshire

law's stress on an equitable division of all the parties'

property.   The  New  Hampshire decree may just as well not decide

who owned specific property prior to the divorce: its main

concern  is  with who will own what after the divorce. And, the

Supreme Court has discouraged abstention based solely on the

ground that a related state court action may address similar

issues, Colorado River Water Conservation Dist. v. United

-11- -11-

States ,  424  U.S.  800,  817 (1976), with only limited exceptions,

e.g., Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496

(1941). 

A more plausible basis for abstention is the possible

interference  that a civil RICO action at this time might cause

to the state court's decision as to how to divide property in

the divorce. The so-called domestic relations exception does

not preclude federal courts from adjudicating tort actions

merely  because the parties were married and are in the process

of  divorce.   Ankenbrandt  v. Richards, 504 U.S. 689, 704 (1992).

But this case is not just a tort action between divorcing

parties:   the  civil  RICO  claim is directed to the same property

that is going to be allocated between the parties as a result

of the decree. Cf. Colorado River, 424 U.S. at 819.

In  this  instance,  the  state court may be unlikely to award

Joseph any interest in property now owned solely by Annette,

but that is hardly so clear with respect to property owned

jointly. Suppose Annette were awarded the value (or three

times  the  value)  of  disputed jointly owned property in the RICO

case  and  the  state  court  then determined that the same property

ought to be allocated to Joseph. At the very least, there is

a possibility of conflict between judgments,

requiring one of them to be modified to take account of

the other. Otherwise, the state divorce decree's intended

allocation of property could easily be frustrated.

-12- -12-

Another  potential  conflict is Annette's expressed interest

in  seeking  interim  relief from the federal court, presumably by

way  of  provisional  attachments or other ad litem remedies. Cf.

Fed. R. Civ. P. 64; Teradyne, Inc. v. Mostek Corp., 797 F.2d

43, 53 (1st Cir. 1986). The federal court's ability to reach

and freeze out-of-state property may well be greater than the

New Hampshire divorce court's. At the same time, interim

allocations of property are standard fare for divorce courts,

and the obvious potential for interference with this function

is an extremely serious matter.

Our  case,  and those kinds of threatened interference, are

not a perfect fit with the Burford doctrine. There, the

Supreme Court approved abstention to avoid conflict with a

comprehensive state regime of business regulation.5 But

abstention  doctrines are not "rigid pigeonholes," Pennzoil Co.

v. Texaco Inc., 481 U.S. 1, 11 n.9 (1987), and the ultimate

question is whether there are "exceptional circumstances" in

which abstention "would clearly serve an important . . .

interest."   Colorado  Rive r, 424 U.S. at 813 (citation omitted).

Such an interest is potentially present here. See also Minot

v. Eckardt-Minot, 13 F.3d 590, 593-95 (2d Cir. 1994).

5Burford, 319 U.S. at 326 (allocation of oil drilling
rights).   See also Alabama Public Serv. Comm'n v. Southern Ry.
Co. ,  341  U.S. 341, 346-48 (1951) (scheduling of local railroad
service);  All state Ins. Co. v. Sabbagh, 603 F.2d 228, 229 (1st
Cir. 1979) (setting of automobile insurance rates).

-13- -13-

Not  only  divorce, but the allocation of property incident

to a divorce, are longstanding local functions governed by

state law. Ankenbrandt, while curtailing the domestic

relations  exception,  nevertheless made clear the priority given

the state resolution of family law issues, including alimony

determinations. 504 U.S. at 704, 706. See also Friends of

Children, Inc. v. Matava, 766 F.2d 35, 37 (1st Cir. 1985).

Divorces  are  frequently  accompanied by disputes about property,

including  both  interim  and final allocations. Such state court

authority  would be threatened if civil RICO actions become the

shadow proceeding for policing such disputes.

We conclude that abstention by use of a stay may be

permissible  where  a  RICO  action is directed against concealment

or transfer of property that is the very subject of a pending

divorce  proceeding.   The  divorce proceedings might or might not

resolve the federal dispute--there are many possible

permutations and plenty of unanswered legal questions. But

staying the federal RICO claim will reduce the risk of

interfering with interim state allocations and permit the

federal court to tailor any final federal judgment to avoid

undermining the divorce court's allocation of property. 

3. While abstention may be permissible, it cannot be

automatic in a case of this kind. A decision to abstain

requires not only that certain preconditions be met, but also

that  the  district  court  reasonably find that such abstention is

-14- -14-

appropriate in the case at hand.6 Of course, this may not be

much of an issue when the particular abstention rubric itself

resumes  stro

defendant seeks a federal injunction interfering with an

ongoing state criminal trial. Younger, 401 U.S. at 45, 54.

Cases  like  the  present  one differ markedly from situations

like Younger. Not only do we have far less experience with p ngly in favor of abstention--for example, where a

civil RICO actions that overlap divorce proceedings, but

extreme  variations can be imagined both as to underlying facts

and equitable concerns. Certainly in some instances a civil

RICO claim might be so plausible and so distinct from an

ordinary divorce action property dispute as to undermine any

argument for a stay; or even if a trial were stayed, there

might be a compelling argument for interim relief to protect

the plaintiff's right to ultimate relief in the RICO action.

In sum, abstention here is a possible, but not a

mechanical  answer.   The  district court's judgment cannot stand,

simply  because it conflicts with Quackenbush. Nor do we think

that the dismissal on abstention grounds can simply be

transformed into a stay; such a stay might in the end be

equitably justifiable, but not without giving the parties a

6See Quackenbush, 116 S. Ct. at 1726-28; Colorado River,
424 U.S. at 818; Younger v. Harris, 401 U.S. 37, 54 (1971);
Bath  Memorial Hosp. v. Maine Health Care Fin. Comm'n, 853 F.2d
1007,  1015  (1st  Cir.  1988); Friends of Children, Inc., 766 F.2d
at 37.

-15- -15-

chance to address the matter and not without an appraisal by

the court that goes beyond the possible overlap in issues.

In  making  such  an  appraisal, the district court is free to

consider the plausibility of this civil RICO claim as a

freestanding cause of action, the actual threat in this case

for  conflict  between such a suit and the pending state divorce

action, any threat of immediate harm associated with alleged

ongoing civil RICO violations, and other consequences or

concerns  that make it equitably reasonable to accelerate or to

defer consideration of federal relief. Once the pertinent

factors are mustered and assessed, the district court's

exercise of judgment is normally respected. Friends of

Children, Inc., 766 F.2d at 37.

The district court has no obligation to pursue the

abstention issue at all if the matter can be disposed of more

appropriately on other grounds. Motions to dismiss have been

made for lack of standing (an issue discussed above), for

failure to plead fraud with particularity, and for other

reasons. Possibly, further exploration will reveal that

Annette  has  no standing as to any of the property in question.

In all events, the order in which to consider issues is a

matter for the district judge.

The treatment of the pendent state claims depends, in

turn, on the outcome of the inquiries just described. If the

district court finds no basis for a claim of injury to

-16- -16-

property,  presumably  it  will dismiss the pendent claims without

prejudice. See 28 U.S.C. S 1367(c)(3). If it determines to

stay the civil RICO claim on abstention grounds, then the

treatment of the pendent claims is less clear-cut, see id.

S 1367(c)(4), but the parties have not addressed that issue,

and we express no view upon it.

The judgment of the district court is vacated and the

matter remanded for further proceedings consistent with this

decision.

It is so ordered.

-17- -17-